Keyes.
4 k 300
160    59

HANNAH FORD, Respondent, *v.* EDWARD D. JAMES *et al.*,
Appellants.

TITLE TO REAL PROPERTY. CONVEYANCE. SALE AND DELIVERY. WHAT
CONSTITUTES A DELIVERY SO AS TO CONVEY TITLE. CLOUD UPON TITLE;
ACTION TO REMOVE.

An absolute delivery is one which is complete upon the actual transfer of
the instrument from the possession of the grantor; it may be by acts
merely, by words merely, or by both combined, but, in all cases, an inten-
tion that it shall be a delivery must exist. Hence,

Where a deed was placed in the hands of a party, upon his paying an
advance upon the purchase-price named in the deed, he, at the time, de-
claring that he would not then agree to take the property conveyed, but
would determine in a day or two, and, if he concluded to accept the con-
veyance, would pay the balance, and if not, would return the deed and
receive back the money advanced, and, within the time, did resolve not
to accept the same, and received back the money, though under a fraud-
ulent pretext retaining the deed and having it recorded, — there was no
delivery such as the law requires to give effect to a conveyance.

Where a deed is void, for the reason that it was never delivered, all titles
derived therefrom by subsequent conveyances must of necessity fall
with it.

The statement of the case is transferred from the opinion of CLERKE, J.

THIS was an action brought for the purpose of having a
deed of certain premises in the city of New York described
in the complaint, together with a mortgage, declared null
and void.

About the 28th of May, 1852, Edward D. James, one of
the defendants, having negotiated with Charles S. Spencer,
the agent of the owners of the premises in question, for the
purchase of them, received a deed of the same, signed by the
owners. At the same time he paid to Spencer $25. A parol
agreement was then made between James and Spencer, that,
if the said James concluded, within a day or two, to have
the said premises conveyed to his brother, Albert S. James,
he, Edward D. James, would pay Spencer the remainder of
the purchase-money; but, if he decided, within the aforesaid
time, not to take said deed as a conveyance of the premises,
he would return the deed to Spencer, on being paid back
the $25. Shortly after this time, he informed Spencer that

Albert S. James would not take said premises or deed; Spencer paid back the money to him, and he then promised to send or hand the deed back to Spencer, but never did so. The deed was afterward taken by Edward or Albert to the register's office, on the 28th of June, 1852, for the purpose of having it recorded; and, on that day the register incorrectly recorded the deed in his office, in liber 608, pages 359, 360. The error in the recording was in the description of the premises, by making the starting point to be 150 feet easterly from the easterly line or side of Fifth avenue, instead of 650 feet, as stated in the deed. The error was not corrected until the 17th of June, 1858. The consideration of $600, mentioned in the deed, was not paid by Albert S. James, or by any other person; nor has he, or any of the defendants, or any other person on his or their behalf, ever had possession of the premises, or paid any tax or assessment on the same.

The defendants, Albert S. James and Mary L., his wife, on the 3d of April, 1857, executed and acknowledged a deed of these premises, purporting to convey the same to the defendant Sarah James, wife of the defendant Edward D. James, in which the consideration was stated to be $750; which deed was procured by the said Edward, and no part of the consideration was ever paid by him or his wife, or by any person for her.

Sarah James and her husband executed and acknowledged a mortgage on said premises, bearing date the 4th of April, 1859, to the defendant, Stephen C. Williams, to secure the payment of $700 and interest, on which Williams advanced $600 to the said Edward; which mortgage was recorded in the office of register, in liber 587 of mortgages, page 276, April 11, 1859.

Letitia Graham and John Graham, her husband, on the 18th of June, 1852, executed, acknowledged and delivered to Celia Adelaide, wife of Charles S. Spencer, a deed of these premises, in which it was stated the consideration was $700. This deed was recorded in the office of the register, in liber 605 of conveyances, page 307, on the 8th of July, 1852. The

real consideration consisted of a debt due by John Graham to Spencer, and the assumption of two mortgages on the premises — one executed by John Graham to the mayor, aldermen and commonalty of the city of New York, for $261, dated 1st of May, 1851—and the other by Letitia and John Graham for $100, dated 9th of January, 1852. The referee finds that Celia A. Spencer was a purchaser in good faith, and that both she and her husband believed they acquired a valid title in fee, and neither supposed the deed to Albert S. James had been delivered, so as to be operative as a conveyance.

The said Celia A. and her husband, on the 12th of January, 1853, for the consideration of $750, conveyed the premises to John and Thomas Shaw; the deed was recorded on the same day, in liber 622 of conveyances, page 497. The referee finds they were purchasers in good faith.

John and Thomas Shaw, on the 21st of July, 1859, for the consideration of $2,000, conveyed the premises to the plaintiff; the deed was recorded in liber 787, page 503, on the 25th of October, 1859. The referee finds that the said John and Thomas Shaw, and the plaintiff, each believed the respective deeds conveyed a good title in fee; and neither of them knew, or had any notice that the defendants, or any of them, had any deed of the premises, or lien thereon, or that they or any of them claimed to have any deed or incumbrance on the same, until a short time prior to the commencement of this action.

The said Celia A. Spencer, and John and Thomas Shaw had, successively, possession of the premises, and paid all taxes and assessments thereon, from the time they severally received a deed of the same until they were conveyed to the plaintiff. The Shaws, in the spring or summer of 1856, fenced the premises, and built a dwelling-house thereon, at a cost of about $500, to which the plaintiff made additions in 1859 and 1860.

At the time the deed from Albert S. James to Sarah James was delivered, and at the time the mortgage to Williams was executed and delivered, the premises were in the actual pos-

session of John and Thomas Shaw, who claimed a title adverse to that of Albert, Sarah and Edward D. James.

*I. T. Williams*, for the appellants.

I. It will not probably be disputed, that if the deed was delivered to Albert S. James by what the law will recognize as a legal delivery, the judgment must be reversed.

1. Whether it was so delivered, is a question of law, and not a question of facts.

2. If delivered, the refunding the $25 by Spencer is a matter of no moment. (*Rayner* v. *Williams*, 6 Hill, 469.)

If this be a material fact, then the court erred in finding that the $25 was so returned by Spencer.

(*a*) But two witnesses testified on this point — one positively that it was so returned, the other positively that it was not. There are no corroborative circumstances in favor of such return, but the contrary rather.

The plaintiffs had the affirmative, and, upon testimony thus balanced, it was error of law in the court below to find such fact.

(*b*) But in any view, the court did not find sufficient facts to affect the case.

Who returned the money? Not Graham, but Spencer. Whose money did he return? Not Graham's. There is no finding that he acted as agent for Graham in so returning such money. When did he return it? before or after the conveyance to his wife? before or after this action was commenced? There is no finding on these points, as there was no testimony bearing upon them.

3. Even if delivered, with the understanding that "if the said Edward D. James decided within the aforesaid day or two not to take said deed as a conveyance of said land to said Albert S. James, he, the said Edward D. James, would return said deed to said Spencer, on being paid said $25," then the title passed by the delivery — subject to be defeated only upon an affirmative act of James, to wit, the act of "deciding not," etc. Until such act did take place, the title was

fixed in James. If the act did take place, James was under parol contract to reconvey, but nothing more.

But such parol contract would have been utterly void.

II. The deed was delivered, in legal effect, to all intents and purposes.

There are but two kinds of delivery of sealed instruments known to the law — an actual delivery, and a delivery *in escrow*. If not delivered *in escrow*, it was an absolute delivery.

In *Arnold* v. *Patrick* (6 Paige, 315), the chancellor thus states the rule of law:

" The legal rule is, that a deed, or any other sealed instrument, cannot be delivered to the grantee or obligee, himself, as an *escrow*, to take effect upon a condition not appearing upon the face of such deed or instrument, but that if so delivered, it becomes absolute at law." (See Coke Litt. 36 *a;* Touch. 59; *Thoroughgood's Case*, 9 Coke, 137 *a; Flagg* v. *Mann*, 2 Sumn. 487.)

Nor could it have been delivered to an agent *in escrow*.

In *Worrall* v. *Munn* (5 N. Y. 229), the court held, that " delivery of a deed, or agreement, as an *escrow*, can only be made to a stranger. If made to the party, the delivery is absolute, and the instrument takes effect presently, as the deed or agreement of the party making the delivery.

" In such case, parol evidence of conditions, qualifying the delivery, being contrary to the terms of the instrument, is not admissible.

" Delivery to the agent of the party as such agent, has the same effect in this repect as delivery to the party himself."

These positions seem to have been yielded by the Supreme Court at General Term. The majority of the court concur in the conclusion that the judgment must be affirmed, but are careful to put their decision upon grounds other than that laid down in the opinion of Judge BARNARD. They hold that as A. S. James had never authorized E. D. James to accept the deed, there was therefore no privity of contract between grantor and grantee.

In this view the court erred

1. There is no finding of fact to that effect.

2. The finding of the court is to the opposite effect. The language is, " That deed was never delivered by said Letitia and John Graham, or any one for them, to said Albert S. James, or any one for him, so as to take effect as a conveyance of said land."

The effect of this language is to admit the delivery, but to deny the effect of the delivery.

3. The testimony of both Edward D. James, and Albert S. James, is positive that the one was agent and the other principal in this whole transaction.

But can there be any doubt, that, even if Albert S. James was wholly ignorant of his brother's acts during the transaction, he could ratify them, and thereby place himself in the same position in which he would have been had he directed it from the commencement? (*Commercial Bank of Buffalo* v. *Warren*, 15 N. Y. 577; Story on Agency, § 258; *Brisbane* v. *Adams*, 3 N. Y. 131.)

The question is one between the principal and agent — not one in which the other party can interfere. No one can deny the authority of an agent to do that which his principal has ratified. (See Byles on Bills, 34; *Sweetson* v. *French*, 2 Cush. 309; *Keeler* v. *Salisbury*, 33 N. Y. 748.)

There was no evidence to contradict the testimony of Albert S. and E. D. James, upon this point, and had the court below found the fact adverse to their testimony, it would have been error of law.

The fact of subsequent ratification, standing alone, is sufficient evidence of a prior authority, had there been necessity for such evidence. (*Hopkins* v. *Mollinieux*, 4 Wend. 465.)

III. The error in recording the deed to Albert S. James, is wholly immaterial.

1. It was sufficiently recorded to put all parties on inquiry — the names of the parties there — they were known to all. Inquiry of them at most would have been sufficient; it could not have failed to lead to a knowledge of the fact.

A party put on inquiry, is chargeable with all the knowledge to which that inquiry would, if fairly and faithfully

pursued, have probably led. (*Curtis* v. *Hilton*, 1 Cur. C. C. 390; *Williamson* v. *Brown*, 15 N. Y. 354.)

2. The delivery of the deed to the clerk, or register, for the purpose of being recorded, is, by statute, equivalent to all intents and purposes, to a correct record of the same. (1 R. S. [Edmonds' ed.] 712, § 24.)

The language of the section is as follows: "Every conveyance entitled by law to be recorded, shall be recorded in the order, and as of the time when the same shall be delivered to the clerk, and shall be considered as recorded from the time of such delivery. (*Williams* v. *Birkbeck*, Hoff. 369; *Jackson ex dem Hyer* v. *Van Valkenburgh*, 8 Cow. 260.)

It nowhere appears when the deed was actually engrossed upon the pages of the record, nor when, if ever, it was taken from the office of the register.

3. There is no pretense that the plaintiff, or his grantors, were misled by the error on the record. If they had been misled to their loss, the register, whose fault the mistake was, and not the party, whose fault the mistake was not, would have been liable for such loss.

As it is, the plaintiff presents the inequitable spectacle of asking that she may, to the injury of the defendants, have benefit from a mistake which was in no way their fault, and which never resulted in the slightest injury to her, or to any of her grantees.

IV. The equities of the case are with the appellants, as well as the title.

1. A. S. James paid at least something — Mrs. Spencer, nothing. It is true the premises were worth then but little over the incumbrances; it is the subsequent rise that the parties here are contending for.

V. The court below seem to have held the mortgage of Williams to be void under 1 R. S. (Edmonds' ed.) 690, § 147.

The court overlooked the provisions of the next succeeding section, which expressly excepts mortgages from the operation of that section.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

*John E. Burrill*, for the respondent.

I. The deed from Mrs. Graham to Albert S. James, dated 28th May, 1852, which is the foundation of defendant's title, was not recorded so as to make the record constructive notice to the plaintiff and her grantors, who, by the findings of the Court were subsequent purchasers in good faith and for valuable consideration, until the record was corrected on the 17th of June, 1858.

1. The following authorities show that where a record of conveyance is made constructive notice, the record, in order to be effectual, must be strictly in accordance to law. (*N. Y. Life Ins. Co.* v. *White*, 17 N. Y. 474; *Frost* v. *Beekman*, 1 John. C. 288, 299; *Peck* v. *Mallams*, 10 N. Y. 518 519.)

2. The judge has found as a fact, that no person could tell by examination of the record, that it covered the premises in question, and his finding should be controlling.

3. The description in the deed, as recorded, will answer as well for a lot commencing 150 feet east of Fifth avenue, as for one commencing 650 feet.

4. The recorded deed correctly described the bounds of a lot commencing 150 feet east from the avenue, with the exception of the last line but one, and a party examining had as much right to infer that the mistake was in describing the latter line as being 650 feet from the avenue, as to suppose it to be in making the original starting point 150 feet.

5. The deed from the corporation to Graham contained a further description of the lots — describing them as lots twenty-seven and twenty-eight on the map, etc., made by Serrell, and this description was followed in the deed to Mrs. Spencer, but was not adopted in the deed to James.

II. Mrs. Spencer, the grantors of the plaintiff, and the plaintiff, were *bona fide* purchasers in good faith and for a valuable consideration, and purchased the property without any notice, actual or constructive, of the deed from Graham to A. S. James, or of the deed from the latter to Sarah James, and such deeds were, therefore, void as to them.

1. The court has found such to be the fact, and such finding is conclusive here.

2. If an examination of the evidence be proper, it will show that there is no pretense that either Mrs. Spencer, the Shaws, or the plaintiff, ever heard of either of the deeds under which the defendants claim.

3. The deed from Mrs. Spencer to the Shaws, grantors of plaintiff, was recorded before the making of the deed from A. S. James to Sarah James, so that, when the deed to the Shaws was recorded, January 12, 1853, the title, so far as the defendants were concerned, remained and was in A. S. James.

The record of the deed to A. S. James, as it then stood, was not constructive notice to the Shaws (see preceding points), and the Shaws had no actual notice of such deed as the court has found.

As between the Shaws and A. S. James, the former had the better title to the lot, even had Mrs. Spencer been a purchaser with notice, for the reason that, while A. S. James is proved not to be a purchaser in good faith or for valuable consideration, the Shaws were perchasers in good faith without notice, and as such are entitled to be protected as against an unrecorded deed, although their grantor had notice. (*Jackson* v. *Given*, 8 Johns. 137; *Varick* v. *Briggs*, 6 Paige, 323; *Corning* v. *Murray*, 3 Barb. S. C. 652.)

The superiority of title which thus existed in favor of the Shaws, was transmitted to the plaintiff, and the title which Sarah James took by the deed to her, was in like manner inferior to that of the plaintiff. (Same cases.)

4. Such would have been the case even had Sarah James been a *bona fide* purchaser; but as she is found by the court not to have been such, her claim cannot stand for a moment.

5. The pretense that Mrs Spencer was a parchaser with notice of the deed from Graham to A. S. James, is without foundation.

(*a*) It is not pretended that Mrs. Spencer herself had any notice of the deed to A. S. James, and the only fact relied on to charge her with notice is, that the deed was taken in her name to protect the property against her husband's creditors.

(*b*) Even if this were so, the case would not be altered, because the statute creates a trust only in favor of creditors (and there are none here), and as between the parties themselves, their rights are settled by the legal title.

(*c*) Even if Mrs. Spencer be chargeable with notice of what Spencer knew, she is still to be regarded as a purchaser without notice of the deed to A. S. James, because, although Spencer knew that the deed to A. S. James had been executed and placed in the hands of E. D. James, he knew all the circumstances connected with the transaction, and knew that (as the court has found) the deed was not delivered nor intended to be, and also that E. D. James had told him that he would not accept the deed, and that he had returned it to Graham, the grantor, with the other parties. The findings of the court on the above point show the existence of the very facts which justified Spencer in dealing with the property as if the deed to A. S. James had never been executed.

6. But, as said before, the result is not changed, even if Mrs. Spencer is to be regarded as a purchaser with notice, because her subsequent grantees were purchasers in good faith and without any notice, actual or constructive, of the deed to A. S. James, in whom the paper title, so far as the defendants were concerned, then was, and such subsequent *bona fide* purchasers are entitled to be protected against this unrecorded conveyance. (*Jackson* v. *Given*, 8 Johns. 137; *Corning* v. *Murray*, 3 Barb. 652; *Varick* v. *Briggs*, 6 Paige, 323.)

III. The deed from Mrs. Graham to Albert S. James, which is the foundation of defendant's title, never was delivered by the grantor to said Albert S. James, or any one for him, so as to take effect as a conveyance of the law.

This the court has found in express terms.

1. Whether the deed was delivered or not is a question of fact, and the finding of the court is conclusive on that point.

2. There is no finding that the deed was delivered in *escrow*, or conditionally, but the finding is, that the deed never was delivered at all.

3. The facts specially found by the court do not warrant the inference that there was any delivery of the deed in *escrow* or on condition.

4. The deed had not been approved by the grantee, or any one for him ; nor was it accepted, nor any agreement made to accept it. (*Jackson* v. *Dunlap*, 1 Johns. Cas. 116.)

5. No fact or circumstance is shown which created any obligation or liability on the grantee named in said deed, to accept it or be bound by it — and no condition or contingency upon the performance or happening of which any such obligation or liability could attach to the grantee. (*Jackson* v. *Phipp*, 12 Johns. 418–422.)

6. It is evident, from the testimony of James himself, that the transaction was incomplete, and that there was no acceptance or delivery of the deed.

(*a*) According to the memorandum of account made by James, the incumbrances on the property and the $25 paid, exceeded the price to be paid for the lot by at least $500. He was not, therefore, inclined to carry out the arrangement.

(*b*) James says, that when he discovered this fact, he showed the search to Spencer, and told him that the balance of the money was ready when the difficulty was removed, and that he was willing, on payment of the money already given, to return the deed.

(*c*) And he also says, that he would have returned the deed to Spencer if he had asked for it.

(*d*) If, therefore, the money was paid back to James, according to his own showing, the deed was to be returned, and although he denies that the $25 was repaid, yet, as Spencer swears that it was, and the court so found, it follows that the deed was not to take effect.

7. The cases cited by the appellant to that effect, that a deed cannot be delivered to the grantee or his agent in *escrow* or conditionally, have no application.

In those cases, the delivery was made to an agent appointed by the grantee to receive the deed, and was made to such as agent, and, of course, in such cases, the delivery to the author-

·ized agent appointed for the purpose, had the same legal effect as the delivery to the principal.

8. In the present case, there is no finding that E. D. James was the agent of A. S. James to receive the deed, nor was there any evidence to warrant such a finding.

9. On the contrary, A. S. James had no knowledge of the negotiations between E. D. James and Spencer, and so far as the evidence is concerned, knew nothing of the transaction.

(*a*) It is not pretended that he authorized E. D. James to make the transaction, or that he ever knew or heard that the deed had got into the hands of E. D. James, under the circumstances mentioned.

(*b*) There is no pretense that the $25 advanced came from A. S. James, or that he knew any thing about it.

(*c*) It is very doubtful, from the evidence, whether he ever had the deed in his possession at all; but if he had it at all, it was after it had been recorded, and he swears that he did not send it to the record office.

10. The statement of A. S. James that the deed was given to him by E. D. James for an old debt of $75, which E. D. James owed him, even if true, which may well be doubted, show conclusively that in the negotiation with Spencer, E. D. James was not acting as the agent of A. S. James, and did not receive the deed as such agent.

11. The fact shown in regard to the pecuniary embarrassments of E. D. James, which prevented the use of his own name, and the fact that A. S. James never interfered with the property, or paid any attention to it, and that when called upon by E. D. James, he executed a deed to the wife of the latter without comment or objection, and other undisputed facts ·in the case show conclusively, that E. D. James, in the negotiation with Spencer, was not acting as the agent of A. S. James, but was rather acting on his own account, and that the name of A. S. James was used for the convenience of said E. D. James.

IV. When John and Thomas Shaw (grantors of the plaintiff) purchased the premises and took the conveyance therefor in January, 1853, the deed of Graham to A. S. James had

not been recorded (see first point), and as they became purchasers in good faith and without actual or constructive notice of such deed from Graham, their deed took precedence of that from Graham to James, and the plaintiff, by the deed to her, acquired all the rights which her grantors had, and a title superior to that of A. S. James, or any subsequent grantee. (*Jackson* v. *Given*, 8 Johns. 137.)

V. Even if the record of the deed from Graham to James, as originally made, should be held to have been correct, and the deed held to have been delivered to A. S. James, the grantee therein, the plaintiff is entitled in this action to have the deed and the subsequent deed to Sarah James set aside, on the ground of fraud on the part of E. D. James.

1. The court has found that neither A. S. James, E. D. James, nor Sarah James, were purchasers in good faith or for a valuable consideration.

2. Both A. S. James and Sarah James are liable for the fraudulent conduct of E. D. James in the premises, and the plaintiff is entitled to the same relief against them in respect to the property, which she would have been entitled to against E. D. James.

3. The fraud of E. D. James is fully established by the facts.

The neglect of James to pay taxes, assessments, or mortgages; the silence and secrecy adopted, and the delay in making any claim until after all the liens had been paid and the property improved, all show, as the court found, the transaction was a fraud on his part. (*Tuttle* v. *Jackson*, 6 Wend. 226; *Grimstone* v. *Carter*, 3 Paige, 423, 7–433.)

4. This being an equitable action, the plaintiff is entitled to have the deed set aside, on the ground of fraud charged against E. D. James. (Same cases, and cases cited, 3 Paige, 433.)

VI. The conveyance from Mrs. Spencer to the Shaws (plaintiff's grantors), was recorded before the conveyance from A. S. James to Sarah James, and was, therefore, constructive notice to said Sarah and her subsequent grantees.

As neither A. S. James nor Sarah James were purchasers in good faith, or for valuable consideration, and as she

acquired her title with constructive notice of the deed from Mr. Spencer to the Shaws, what title she acquired was subject to that acquired by the Shaws, and conveyed to the plaintiffs. (*Van Rennselaer* v. *Clark*, 17 Wend. 25 ; *Jackson* v. *Post*, 15 id. 588.)

VII. The premises in question at the time of the conveyance to said James, were in the actual possession of the Shaws, claiming under an adverse title, and the deed to Sarah James was therefore void. (1 R. S 739, § 147 ; *Crary* v. *Goodman*, 22 N. Y. 176 ; *Livingston* v. *Peru Co.*, 9 Wend. 512.)

VIII. Such possession by the Shaws at the time of and before the deed to Sarah James was good constructive notice to Sarah James of their title, and made it her duty to inquire as to the rights of those then in possession.

Had she so inquired, she would never have taken the conveyance. (*Tuttle* v. *Jackson*, 6 Wend. 213 ; 10 Barb. 97 ; 3 Paige, 421, id. 354.)

This fact, however, is rendered comparatively unimportant by reason of the express finding of the court that she took in bad faith.

IX. The deed and mortgages were clouds upon the title, and the plaintiff was entitled to have them set aside. (*Ward* v. *Dewey*, 16 N. Y. 519, 522 ; *Williams* v. *Ayrault*, 31 Barb. 368.)

X. There is no appeal on behalf of Williams, the mortgagee, who is contented with the judgment.

The appeal taken in his name has been abandoned.

CLERKE, J. 1. The transaction between Edward D. James and Charles S. Spencer had none of the essential requisites of a delivery. An absolute delivery is one which is complete upon the actual transfer of the instrument from the possession of the grantor; and it may be by acts merely, by words merely, or by both combined; but in all cases, an intention that it shall be a delivery must exist. So far from this being an element in this case, at the time the deed was placed in the hands of Edward D. James, he declared that he did not then receive

it as a conveyance, but that he would determine, within a day or two, whether his brother would accept it; and, if he determined within that time not to accept it, he would return the deed to Spencer, and receive back the $25, which he had advanced; but, if he determined to accept it within that time, he would pay the remainder of the agreed purchase-money. So it is clear there was and could have been no such acceptance as the law requires. There was no intention, by his own avowal, then, to accept; this was to be determined subsequently. Accordingly, within the time, he resolved not to accept; he called upon Spencer and received back the $25.

2. The conveyance from Albert S. James to the wife of Edward, gave her no rights; the act was not genuine; it was procured by her husband to consummate the fraud, and no consideration was paid. She was evidently not a purchaser in good faith, and so the referee has found. The description, in the record of the deed, was totally different from that in the deed; so that if subsequent purchasers, before the correction of the record, could be affected by a transaction of this kind, there was no notice to them, actual or constructive. The only one of the defendants whose conduct was *bona fide*, and who suffered loss from this fraudulent transaction, was Williams. But as the mortgagors had no title, only a fraudulent record, pretending to give them a title, they could convey nothing to any person, however innocent he may be.

The judgment should be affirmed, with costs.

GROVER, J. The finding of the fact by the Special Term, that the deed dated May 28, 1852, from John Graham and wife, to the defendant, Albert S. James, of the land in question, was never delivered, if sustained, disposes of the case in favor of the respondent, and renders an examination of the other questions raised upon the trial unnecessary. It is obvious, that, if that deed is void for the reason that it was never delivered, all titles derived therefrom by subsequent conveyances must fall with it. The judgment of the Special Term having been affirmed by the General Term, this find-

ing must, by this court, be held conclusive upon the parties, unless wholly unsupported by evidence. An inquiry cannot be gone into here, as to whether the finding was against the weight of evidence. Upon looking into the case, it appears, that the witness, Spencer, testified that he was the agent of the grantors for the sale of the premises; that a deed thereof was made out and executed, and acknowledged by the grantors, which he had in his hands; that Edward D. James had had some negotiations with witness for the purchase; that having the deed in his possession, he went to see Mr. E. D. James and told him he was very anxious he should take the property; that Graham had $25 to pay that afternoon, etc.; that James replied, that he would give me $25, and I might leave the deed with him and call in a day or two, when, if he concluded to take the property, he would pay me the balance, and if he decided not to take it, he would return the deed; that he took the money and gave it to Graham; that sometime afterward he met Mr. James and he said he did not think it worth his while to take the property; that he told James he would give him back the money; that he afterward paid to James the $25, and he said he would send back the papers; that he afterward inquired of him why he had not sent them back, and James told him he had sent them to Mr. Graham. It appeared that he did not send the deed to Graham, but retained it, and caused it to be recorded. There was no claim of any delivery of the deed, other than what was made by Spencer. Taking the evidence of Spencer alone, and it clearly appears that he never made any delivery of the deed, conditional or otherwise. He did not deliver it to James, as and for the deed of the grantors, but merely left it with him as a depositary until he should determine whether or not he would take the land. This constitutes no legal delivery. A deed may be deposited with the grantee or handed to him for any purpose other than as the deed of the grantor, or as an effective instrument between the parties, without becoming at all operative as a deed. The evidence in conflict with Spencer's, tending to show that it was delivered as the deed of the

grantors, cannot be considered by this court upon this appeal. The Supreme Court had the power to reverse the finding of the Special Term, upon the ground that it was against the weight of evidence, but this court has no such power.

The judgment appealed from must be affirmed.

Judgment affirmed.