Johnson, J.
The judge charged the jury that if the paper sued upon was never delivered as a note, the plaintiff must *140 fail in the action ; and that even if it was delivered, and the plaintiff neglected to make proper inquiry as to its origin, he was not a bona fide holder and could not recover. The exception to the charge was general, hut if both propositions were erroneous the error can be reached and corrected; especially as the attention of the judge appears to have been called, by requests to charge, to the precise grounds on which the charge is now claimed to be erroneous.
The latter branch of the charge presents the question of notice to put a party on inquiry, as affecting his right to be regarded as a bona fide holder. It is now, however, the settled law that mere negligence, however gross, is not sufficient to deprive a party of the character of a bona fide holder. There must be proof of bad faith. That alone will deprive him of that character. (Welch v. Sage, 47 N. Y., 143; Seybel v. National Currency Bank, Commission of Appeals, 1873, MSS.;* Murray v. Lardner, 2 Wall., 110; Goodman v. Simonds, 20 How., 452.) This part of the charge, therefore, cannot be sustained. If, then, the appellant can maintain the position that the other branch of the charge is also erroneous, he will be entitled" to the reversal of the judgment, notwithstanding the generality of the exception.
The evidence tended very strongly to show that the signature of the defendant, to the note sued upon, was obtained from him through a very gross and fraudulent representation perpetrated upon him by one Miller. That when he signed it, he supposed he was signing a paper of a very different character, and not an engagement to pay money absolutely. He had, just before, signed an order for the delivery to himself of a hay fork and two grappling pulleys, amounting together in price to nine dollars, for which he engaged to pay; and this paper now in suit was presented to him as a duplicate of that order, and was signed as such without examination or reading it, upon the statement of Miller, with whom *141 he was dealing, that such was its character. There does not appear to have been any physical obstacle to the defendant’s reading the paper before he signed it. He understood that he was signing a paper by which he was about to incur an obligation of some sort, and he abstained from reading it. He had the power to know with certainty the exact obligation he was assuming, and chose to trust the integrity of the person with whom he was dealing, instead of exercising his own power to protect himself. It turns out that he signed a promissory note, and that it is. now in the hands of a holder in good faith, for value. The question which arises on the branch of the charge now under consideration is, whether it is enough, as against a bona fide holder, to show that he did not know or suppose that he was signing a note, unless it also appears that he was guilty of no laches or negligence in signing the instrument. To that inquiry the attention of the judge, at the trial, was distinctly called; and the instruction which he gave and which was excepted to, did not submit, but excluded the consideration of it from the jury. It is quite plain that if the law is that no such inquiry is admissible, a serious blow will have fallen upon the negotiability of paper. It will be a premium offered to negligence. To insure irresponsibility only the utmost carelessness, coupled with a little friendly fraud, will be essential. Paper in abundance will be found afloat, the makers of which will have had no idea they were signing notes, and will have trusted readily to the assurance of whoever procured it that it created no obligation. To avoid such evils it is necessary, at least, to hold firmly to the doctrine that he who, by his carelessness or undue confidence, has enabled another to obtain the money of an innocent person, shall answer the loss. If it be objected that there must be a duty of care, in order to found an allegation of negligence upon the neglect of it, it must be answered that every man is bound to know that he may be deceived in respect to the contents of a paper which he signs without reading. When he signs an obligation without ascertaining its character and extent, *142 which he has the means to do, upon the representations of another, he puts confidence in that person; and if injury ensues to an innocent third person by reason of that confidence, his act is the means of the injury, and he ought to answer to it.
In Foster v. MacKinnon (L. P. [4 C. P.], 704) the action was upon an indorsement of a bill of exchange, and the evidence was that the defendant indorsed it believing it to be a guarantee — that being represented to him as its nature by a person in whom he put confidence. The judge charged the jury that if the defendant signed it not knowing it to be a bill, but believing it to be a guarantee, in consequence of a fraudulent representation as to its character, and if he was not guilty of any negligence or laches in signing it, he was not bound. The jury found for the defendant. Upon a review of the decision, and after a very full and able discussion of the questions involved, the court held the direction at the trial to have been right; but a new trial was granted upon the ground that they were not satisfied with the finding of the jury on the question of fact, as I understand it, in respect to the question of negligence.
In Whitney v. Snyder (2 Lans., 477) evidence had been refused that the defendant was unable to read, and that the note which he had, in fact, signed was represented to him to be an instrument of a different character, and was signed by him under such a belief. The court held that the evidence ought to have been received, principally upon the ground and authority of the case last cited — approving both branches of the rule as stated in that case, and adding that the case then in judgment was stronger for the defendant on the question of negligence than was Foster v. MacKinnon. This was clearly so; for in Whitney v. Snyder it appeared that the defendant could not read, and he was therefore compelled to put confidence in some one as to the contents of any paper which he might be called upon to sign. Indeed, the same exception in respect to negligence is recognized as a necessary element in the decision at General Term in this case. *143 The difficulty is that, at the trial, the judge rejected that qualification of the rule, and held that if the party did not intend to make a promissory note he could not he held bound, even in favor of a bona fide holder for value.
The principle involved is recognized and in substance decided in Putnam v. Sullivan (3 Mass., 45). In that case the defendants had left with a clerk some signatures on blank pieces of paper, intended to be used as notes or indorsements, according to specific instructions. The clerk was induced by fraud to part with one of these blank signatures, and it was filled up as a note leaving the signature to appear as that of a payee and indorser. The action was by a holder in good faith, and the court, giving judgment by Chief Justice Pabsons, say: “ The counsel make a distinction between the cases where the indorser, through fraudulent pretences, has been induced to indorse the note he is called upon to pay, and when he never intended to indorse a note of that description but a different note and for a different purpose. Perhaps there may be cases in which this distinction ought to prevail; as if a blind man had a note falsely and fraudulently read to him, and he indorsed it supposing it to be the note read to him. But we are satisfied that an indorser cannot avail himself of this distinction, but in cases where he is not chargeable with any laches or neglect or misplaced confidence in others. Here, one of two innocent parties must suffer. * * * The loss has been occasioned by the misplaced confidence of the indorsers in a clerk too young or too inexperienced to guard against the arts of the promissors.” Hpon these grounds the indorsers were held liable.
In Douglas v. Matting (29 Iowa, 498), the judge says: “ It is better that the defendants and others who so carelessly affix their names to papers, the contents of which are unknown to them, should suffer from the fraud their recklessness invites, than that the character of commercial paper should be impaired and the business of the country thus interfered with and unsettled.”
In all these cases, the real ground of decision is not that *144 the party meant to make a promissory note, but that meaning to make an obligation in writing, and which was put in writing that it might of itself import both the fact and the form and the measure of the obligation, he trusted another to fix that form and measure, without exercising that supervision which was in his power and by which perfect protection was possible. In such eases, the rule is, that he is bound by the act of him who has been trusted in favor of a holder in good faith.
The judgment must be reversed and a new trial granted, costs to abide the event.
All concur.
Judgment reversed.

54 N. Y., 388.