Fenton v. Robinson.

FENTON v. ROBINSON.

*Negotiable instrument — promissory note procured by fraud or mistake.*

Where a negotiable promissory note is procured by fraud, deceit or mistake, the maker not having intended to make a note, and it passes to a *bona fide* holder for value before maturity, such facts constitute no defense unless the maker shows that he was not guilty of any negligence or laches in putting his signature to the note.

MOTION by plaintiff for a new trial upon case and exceptions, ordered to be heard in the first instance at the general term, after a verdict for defendant at the circuit.

The action was brought by Aaron D. Fenton against Christopher S. Robinson upon a promissory note for $200. The plaintiff was a *bona fide* holder of the note, having acquired it for value before

maturity. The defense was that defendant never intentionally made the note, and, if it was signed by him, it was procured by the fraud of the payee, one Ingalls. The said Ingalls, who was a stranger, came to defendant's house and urged him to take the agency of a seed machine, a model of which he exhibited. After considerable parleying, defendant was induced to accept the agency, whereupon Ingalls drew up four papers which he pretended to read to defendant, and which, as he said, contained duplicates for two contracts. He induced defendant to sign these, and affixed his own name to two of them, which he gave defendant. He kept the other two. Defendant, who could not understand very well the papers given to him, asked Ingalls to read and explain the same to him, which Ingalls pretended to do. He never knew of the existence of the note until he received a letter informing him of the fact from plaintiff.

At the trial the court were asked, by plaintiff, to direct a verdict for him, which was refused ; and the case being submitted the jury found in favor of defendant. Such other facts as are material appear in the opinion.

*Thomas D. Robinson* and *O. P. Hurd*, for plaintiff. The note was valid in the hands of plaintiff. *Vallett* v. *Parker*, 6 Wend. 615 ; *Hall* v. *Wilson*, 16 Barb. 548 ; *Rockwell* v. *Charles*, 2 Hill, 499 ; *Magee* v. *Badger*, 34 N. Y. 247 ; *Belmont Branch Bank* v. *Hoge*, 35 id. 65 ; *Turnbull* v. *Bowyer*, 40 id. 456 ; *Welch* v. *Sage*, 47 id. 143 ; *Hill* v. *Northrup*, 4 N. Y. Sup. 120 ; *Douglas* v. *Matting*, 4 Am. Rep. 238 ; S. C., 29 Iowa, 498 ; *Chapman* v. *Rose*, 47 How. 13 ; S. C., 9 Alb. L. J. 339 ; Edw. on Bills, §§ 308, 310 ; Story on Prom. Notes, § 181 ; Chitty on Bills, 78, 79.

*J. McGuire*, for defendant.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

JAMES, J. In this case no judgment was pronounced on the verdict, none entered and no appeal taken. The case comes here solely upon the order of the judge at the circuit, upon a motion for a new trial on a case and exceptions, under authority of section 265 of the Code, and, if a new trial is denied, judgment on the verdict may be given in this court. The plaintiff is therefore confined to

Fenton v. Robinson.

the exceptions taken at the trial. *Siegel* v. *Schantz,* 2 N. Y. Sup. 353.

The action was upon a promissory note for $200, payable to Ingalls or bearer, which had come to the plaintiff as a *bona fide* purchaser, for value before maturity.

The defense was that defendant never made or delivered the note ; that the signature thereto, if made by the defendant, was obtained by fraud, and without defendant's knowledge that he was signing such a paper.

At the close of the trial the plaintiff requested the court to direct a verdict in his favor for the amount of the note and the request was refused.

The case was then submitted to the jury, the court charging : "If defendant executed this note, understanding that he was executing a promissory note — understanding that he was to execute it to this agent in this business transaction, although he was induced to it by fraud on the part of this agent, it would be no defense to this suit; but if defendant supposed and believed and understood, at the time, that he was only signing a duplicate of an order for the delivery of machines, or a duplicate of a contract creating an agency for the sale of machines in the town of Hector, and did not understand or suppose, or intend to sign any promissory note at all, and was guilty of no neglect on his part in this transaction, in signing the papers — in signing papers he did not understand the real purport of — then these facts, if found from the evidence in this case, are a legal defense to this note." So that the distinct question was put to the jury whether, if defendant did not intend to sign a note, or understand he was signing a note, and his signature was obtained by deception and without his knowledge, he was guilty of any negligence in signing, under the circumstancos as shown by the evidence. No objection was taken by the plaintiff to this charge, except to that portion "wherein the court charged the jury that if defendant signed the note, not knowing it was a note, he was not liable." As no such charge appears in the case, nor any thing like it, unless accompanied by qualifying or explanatory words, the exception is of no effect. The jury found for the defendant.

Therefore, the only exception left in the case is the exception to the refusal of the court to direct a verdict for the plaintiff at the close of the trial.

This case in its facts is very similar to that of *Chapman* v. *Rose*, 44 How. 364; S. C., 9 Alb. Law J. 339, except that in this case the question of negligence was submitted to the jury, and in that, its submission was refused, and for that reason the case has since been reversed, 56 N. Y. 737. In *Chapman* v. *Rose* the charge was "that if the jury concluded, when Rose signed the orders, he did not intend to execute a note, as the transaction never called for one, it was not a note, and was never, at any time, valid in the hands of any party. The general term sustained this ruling. In reversing it, the Court of Appeals said : "It turns out that defendant signed a promissory note, and that it is now in the hands of a holder in good faith for value. The question which arises on this branch of the charge now under consideration is, whether it is enough, as against a *bona fide* holder, to show that defendant did not know or suppose he was signing a note, unless it also appears that he was guilty of no laches or negligence in signing the instrument. To that inquiry the attention of the judge at the trial was distinctly called, and the instruction which he gave, and which was excepted to, did not submit, but excluded the consideration of it from the jury."

The case of *Foster* v. *Mackinnon*, cited from L. R., 4 C. P. 704, in support of the ruling, was an action upon an indorsement of a bill of exchange, and the court charged the jury "that if the defendant signed it, not knowing it to be a bill, and believing it to be a guaranty in consequence of a fraudulent representation as to its character, and if he was not guilty of any negligence or laches in signing it, he was not bound. The jury found for the defendant. Upon a review, and upon a full and able discussion, the court held the direction to be right."

Therefore, in this class of cases, I understand the rule to be, that when a negotiable promissory note is procured by fraud, deceit or mistake, the maker not having intended making a note, and it gets into the hands of a *bona fide* holder for value before maturity, showing such facts constitutes no defense, unless defendant can go farther and show and establish, that, in putting his signature to the note, he was not guilty of any negligence or laches. If a party can establish all these facts he cannot be charged with such an instrument any more than he can be with a note to which his name has been forged.

In this case there was evidence upon the question of negligence;

the defendant's age ; being unaccustomed to business outside his farm ; his efforts to read the papers ; inability to understand them ; his having them read over to him ; observing they were all right as read, and contained no agreement to pay money except as provided in the contract. This evidence, even though weak, was proper for the jury; it would have been error not to have submitted it, and therefore the court was right in its refusal to direct a verdict as requested.

Upon the motion before us, we have no right to review the verdict; no·right to examine the evidence, further than necessary to determine whether the court was right in refusing to direct a verdict for the plaintiff.

The motion for a new trial is denied, and judgment ordered for defendant on the verdict.

LEARNED, P. J., dissenting. I think that the court should have directed a verdict for plaintiff. It was admitted that the plaintiff was a *bona fide* holder for value.

The syllabus of *Chapman* v. *Rose*, 56 N. Y. 137, is that where one, having the opportunity and the power to ascertain with certainty the exact obligation he is assuming, yet chooses to rely on the statements of the person with whom he is dealing, and executes a negotiable instrument, without reading or examination, as against a *bona fide* holder, he is bound by his act. To avoid liability he must show that he was guilty of no laches or negligence in signing. In that case the court say that· " meaning to make an obligation in writing, and which was put in writing that it might of itself import the fact and the form and the measure of the obligation, he trusted to another to fix that form and measure, without exercising that supervision which was in his power, and by which perfect protection was possible, in such case, the rule is that he is bound by the act of him who has been trusted, in favor of a holder in good faith."

That case is almost identical with the present. Ingalls, a stranger, came to the defendant's house and made some bargain with him about a cultivator patent right. The defendant had a wife and five children in his family. He could read, and two of his sons could read. He did read one of the papers — that which was delivered to him. Ingalls said the other was just like it, and the defendant signed it, without reading and without having his family read

it. Thus the defendant had the opportunity and power to ascertain, with certainty, the exact obligation he was signing. He could have read it, or he could have had his sons read it.

Instead of doing this, he trusted to the statements, not of an indifferent person, but of the person with whom he was dealing. And that person was an utter stranger. Can it be said that he was guilty of no negligence ?

It is not a question of degree of negligence. It is a question whether there was any negligence. If there was, the defendant cannot shield himself from liability on his note. By signing the note he enabled Ingalls, or some one else, to obtain the money of the plaintiff, an innocent person. To escape from liability on the note, he must show that he was guilty of no negligence or laches. We must remember that negligence is not the ground of action. Want of negligence is the alleged ground of defense.

Now, the defendant did not read the paper which he signed and gave to Ingalls. He had the power to read it and the opportunity; he could have caused it to be read to him by those on whom he might reasonably rely ; he did not do this ; he trusted a man whose interests were adverse to his own, and no reason is shown why he should have thus trusted. The facts were undisputed. I think they did not warrant the submission to the jury of the question whether the defendant was free from laches or negligence.

BOARDMAN, J. Concurring in brother LEARNED's views of the law, I still think the question of defendant's negligence was fairly submitted to the jury, and the judgment should be ordered for the defendant on the verdict, unless there is conclusive evidence of negligence on defendant's part. I think there was evidence tending to show that the defendant exercised care and prudence in ascertaining the contents of the paper signed by him. He endeavored to find out what he was signing, and supposed he had. It is true the evidence is not very strong or satisfactory, but it is evidence upon the subject, and it can barely be a matter of law to determine the dividing line between necessary care on the one hand, and negligence on the other. Believing that there is some evidence to sustain the verdict of the jury, I am disposed to concur in the opinion of brother JAMES.

*Judgment for defendant.*