JOHN MOSHER, Plaintiff, v. PLATT CARPENTER, Defendant.

*Forgery of negotiable paper — when person signing it is estopped from denying its genuineness.*

In 1874 a promissory note made by one George W. Carpenter, a son of the defendant, and indorsed by the latter, was transferred to one McKee, who stated to the defendant that he had transferred it to one Hamlin, and that Hamlin said he wished defendant had signed it on its face. Subsequently Hamlin saw the defendant, and the latter having agreed to sign the note on the face, Hamlin produced the note, now in suit, and defendant signed it as surety. Subsequently the note was transferred to other persons and purchased by the plaintiff before maturity, and in good faith. Upon the trial of this action, brought upon the note, it appeared that the note signed by defendant was not the note originally indorsed by him, but was a copy thereof, upon which the signatures and indorsements had been forged by McKee. Defendant interposes this as a defense, alleging that at the time of signing his name at Hamlin's request, he made no examination of the note, because the face looked just like the one he had signed, and he supposed it was the same.

*Held*, that the defendant having had full opportunity to examine the note as to its character and genuineness, and having failed so to do, preferring to rely upon the statements of McKee and Hamlin, he could not interpose such a defense in an action by one who purchased the same in good faith before maturity.

Motion for a new trial on exceptions ordered to be heard in the first instance at the General Term, after a verdict directed for the defendant.

*Wm. H. Smith*, for plaintiff.

*Henry R. Selden*, for defendant.

Talcott, J. :

This is a motion for a new trial by the plaintiff, after a verdict for the defendant at the Ontario Circuit, the exceptions being ordered to be heard at the General Term in the first instance.

The action is brought upon a promissory note, signed by the defendant as surety for one George or George W. Carpenter, deceased, who was the son of the defendant, Platt Carpenter. The signature was made under the following circumstances : George W.

Carpenter had made a note for some indebtedness to one James McKee for $750. The note, as it appeared on the trial, was payable to James McKee or bearer, purported to be signed George Carpenter, Platt Carpenter, surety, and to be indorsed Platt Carpenter, H. W. Hamlin and F. H. Hamlin, and also with a guaranty of collection by James McKee.

The following facts appeared in evidence : George or George W. Carpenter, had made such a note to McKee in September, 1874, which the defendant had indorsed, and which, McKee informed the defendant, he was going to negotiate to H. W. Hamlin. McKee afterwards informed the defendant that he (McKee) had seen Hamlin, and that Hamlin said he wished the defendant had signed it on the face, and that the way the defendant came to undersign the note as surety, was as follows : The defendant saw Hamlin at East Bloomfield after the note in suit had been passed by McKee to Hamlin, and the defendant then told him that McKee said he wished the defendant had signed the note on the face, and that he (the defendant) would as soon sign it on the face as on the back. The two then went to the house of Hamlin, when Hamlin produced the note and a pen and ink and the defendant signed the note on the face as it appeared on the trial. The defendant testified that he did not make any examination of the note at the time, "because the face looked just like the one he had signed, and he supposed it was the same." This note in Hamlin's possession must be assumed, from the verdict of the jury, to have been a forgery, both as to the signature of George Carpenter and the indorsement of defendant, and evidence was given upon the trial which warranted the jury in coming to the conclusion, that McKee had used the genuine note to fabricate several others which he had negotiated to different persons, and of which forgeries the note in suit was one, and had then absconded.

The defendant testified in his own behalf that the note in question was not the one he had indorsed. That he knew his son's handwriting. That his son signed his name George W. Carpenter, and defendant never saw him sign his name without the middle letter. That the signature on the back of the note was not his (the defendant's) genuine signature, and proceeded to point out several marks by which his genuine signature was distinguishable from the signature on the back of the note in suit. H. W. Hamlin transferred

the note without consideration as a gift to his son, F. H. Hamlin, who indorsed and transferred it to the plaintiff for a full consideration, who received it before maturity, and in good faith. The jury must be taken to have found under the charge of the court, that the defendant was guilty of no negligence when he signed the note as surety after it had been transferred to Hamlin, and there was no evidence that either of the Hamlins had notice, while they held the note, but what it was, in all respects, a genuine note.

The question then arises whether, under such circumstances, a *bona fide* holder for a valuable consideration, to whom the note was negotiated before maturity, can recover on it.

The defendant, by indorsing a note, impliedly contracts that it was, in truth, made by the party by whom it purports to have been executed, and cannot deny the fact when sued on his indorsement. (*Dalrymple v. Hillenbrand*, 62 N. Y., 5.) But when the holder procures the indorsement of a forged note, with a knowledge of the forgery and upon a representation to the indorser that it is genuine, *he* cannot enforce it against the indorser, nor can a person who receives such a note after maturity or without consideration. (*Turner v. Keller*, 66 N. Y., 66.)

The warranty of genuineness applies to a person who signs the face of a note as a surety as well as to the indorser. His own signature is an implied assertion of the genuineness of those signatures which precede his upon the paper. (*York Co. M. F. Ins. Co.* v. *Brooks et al.*, 51 Maine, 506; *Chase* v. *Hathorn*, 61 id. 505; *Selser* v. *Brophy*, 3 Ohio St. R., 302.)

Although the jury must be taken to have found that the defendant was guilty of no negligence when he signed the note as surety, after it came into the possession of the elder Hamlin, we do not think there was any evidence upon which the jury was justified in that conclusion. In the case of *Whitney* v. *Snyder* (2 Lansing, 477), decided in this department, the defendant, whose signature to a promissory note was obtained without his knowledge, could not read and was obliged to trust to the representations of the other party as to the nature and character of the instrument signed by him, but that case fully concedes that where the party sought to be charged, has knowingly signed and put in circulation an instrument known by him to be a negotiable security, he is bound to know that he is fur-

nishing the means whereby third parties may be deceived and innocently led to part with their property on the face of his signature, and in ignorance of the true state of the facts.

Since the case of *Whitney* v. *Snyder*, that case, with some others, has been noticed by the Court of Appeals in the case of *Chapman* v. *Rose* (56 N. Y., 137), in which that court lays down the following rule: "Where one having the power to ascertain with certainty the exact obligation he is assuming, yet chooses to rely upon the statement of the person with whom he is dealing, and executes a negotiable instrument without reading or examination, as against a *bona fide* holder for value, he is bound by his act, and is estopped from claiming that he intended to sign an entirely different obligation, and that the statements upon which he relied were false. To avoid liability he must show that he was guilty of no laches or negligence in signing," and the opinion goes upon the ground that there does not appear to have been any physical obstacle to the defendant reading the paper before he signed it; and alluding to the case of *Whitney* v. *Snyder*, Judge JOHNSON remarks that in that case the defendant was unable to read, which seems to have presented the physical obstacle which would, under some circumstances, excuse a party whose signature has been obtained without his knowledge to a negotiable security.

There was no obstacle of that nature here. The defendant could read, and borrowed a pair of spectacles on the occasion to examine the note which was presented to him. He signed his name directly under that of his son, whose pretended signature on the note omitted the middle capital letter, although the defendant says he had never seen his son write his name without the middle letter, and he was upon the trial able to point out several discrepancies between his son's genuine signature and the signature on the face of the note, and his own genuine signature and the indorsement on the note in question. Under these circumstances we think the defendant was bound to know whether or not the note was a genuine note, and that he cannot defend upon the ground that he was ignorant of the character of the paper he signed, or that he chose to rely upon the representations, if any, of the party with whom he was dealing, or the statement of McKee that he intended to let Hamlin have the genuine note, but that he placed his name on a negotiable instru-

ment, well knowing or having full opportunity to ascertain its character, and that, therefore, he is liable to a *bona fide* holder for value and before maturity. When the plaintiff had shown himself to be a holder for value and before maturity, the onus of proving notice or want of good faith was thrown upon the defendant, and there seems to have been no evidence in the case upon which the jury would have been justified in finding that the plaintiff had any reason to suppose that the defendant had signed the note under any mistake of fact. We think, therefore, that the plaintiff was entitled to a verdict on the facts shown by the case.

New trial granted, costs to abide the event.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Ordered accordingly.