THE NATIONAL EXCHANGE BANK OF AUBURN, PLAINTIFF, *v.* JOHN VENEMAN. IMPLEADED WITH OTHER DEFENDANTS.

43   241
137a 313
43   241
12ap195

*Negotiable paper — right of the maker to defend an action, brought by a* bona fide *purchaser for value before maturity, upon the ground that he was induced to sign the paper by false representations as to its character — the burden of proving this, and his freedom from laches, rests upon him.*

Where a party is induced to sign a negotiable instrument, by fraud, artifice or deception practiced upon him by another as to the nature of the instrument, and the maker signs, the same innocently and under the belief that it is a contract of a different character, there can be no recovery upon the bill or note although the holder may be an innocent purchaser for value before maturity, unless the maker was guilty of laches or carelessness in omitting to read the same, or by some other means ascertaining the true nature and import of the instrument.

If, however, the maker was guilty of laches or negligence in this respect he will be liable to a *bona fide* holder for value, who purchased the note before maturity.

Where the plaintiff is a *bona fide* purchaser before maturity for value, the burden of proof is cast upon the defendant, to show that he was induced to sign the note by false and deceptive representations, and that he was free from laches or negligence on his part.

The testimony given upon the trial of this case was considered by the General Term, and held to be sufficient to justify the court below in denying the request of the plaintiff's counsel to direct a verdict in its favor upon the ground that upon the undisputed facts the defendant was guilty of laches and carelessness in signing the note upon which the action was brought, without ascertaining its nature and import, and that as the plaintiff purchased the same before its maturity; in good faith and for a valuable consideration it was entitled to a verdict for the amount of the note as matter of law.

*The National Exchange Bank of Auburn* v. *Ogden* (31 Hun, 452) distinguished.

MOTION by plaintiff for a new trial founded upon exceptions ordered by the trial court to be heard at the General Term in the first instance. The cause was tried at the Chautauqua Circuit, and a general verdict rendered for the defendant, of no cause of action.

*John D. Teller*, for the plaintiff.

*Walter L. Sessions*, for the defendants.

BARKER, J.:

This action is founded upon a negotiable promissory note made by the defendant Venemans for the sum of $220, payable to his own order, and by him delivered to a person with whom he had a business transaction on the day the note bears date. Before its maturity the plaintiff became a *bona fide* purchaser thereof for value. The maker interposed the defense that at the time he signed the note he understood and believed that it was a contract of a different import, not a note ; that he was induced to sign and deliver the same by the false and fraudulent representations of the person to whom it was delivered as to its true nature and contents.

Upon the trial he also contended that, in view of all the attending facts and circumstances, he was free from the imputation of laches and carelessness in relying upon the person to whom it was delivered as to the real character of the instrument. At the close of the evidence the plaintiff requested the court to direct a verdict in its favor upon the ground that upon the undisputed facts the defendant was guilty of laches and carelessness in signing the note without ascertaining its nature and import, and as the plaintiff purchased the same before its maturity, in good faith and for a valuable consideration, it was entitled to a verdict for the amount of the note as matter of law. This request was denied by the court, and the plaintiff took an exception to the ruling, and this presents the only question for our consideration.

Most of the evidence bearing on the question of the defendant's negligence was given by himself, as a witness in his own behalf. If the jury believed his statements they were justified in finding as facts that several days before the note was signed the defendant had negotiations with two persons at his own house, both of whom were strangers to him, which resulted in the execution and delivery of two separate instruments in writing, both of which were given in evidence. By the terms of one of them the defendant was appointed the agent of the " Port Huron Iron Works," located at Port Huron, Michigan, with authority to sell, in the township in which the defendant resided, cornshellers manufactured by that company. By the terms of the other agreement, signed by the defendant and one J. Perry, who claimed to be the agent of the said company, the company agreed that the defendant might return,

after four months' experiment in making sales, all machines which were not sold which he had received from the company.

Before any of the machines were delivered to the defendant, and on the day the note was given, another person, also a stranger to the defendant, called at his house and stated to him in substance that he was the agent of the manufacturing company, and that there was then at the railroad depot, located some few miles from the defendants residence, twenty cornshellers, which had been consigned to him in pursuance of the previous arrangement, and that he desired the defendant to sign a memorandum or contract, as evidence to be shown to the company that the defendant had received cornshellers shipped to him, and that he was pecuniarily responsible for the same.

It does not appear from the case that this person disclosed his name, or that the defendant made any inquiries as to his authority to represent the manufacturing company; nor does it appear that there was not a manufacturing company known by the name of the Port Huron Iron Works, engaged in the manufacture of cornshellers at Port Huron. But the jury were justified in reaching the conclusion that the defendant negotiated with the persons first named in good faith, supposing that he was making a valid contract with a responsible party, intending, on his part to carry out the agreement, and also believed that one or more machines would be sent to him -for the purpose of being sold as agreed upon in the written instrument. The last named person came to the defendant's house in company with a young man some seventeen years of age, who was then also a stranger to the defendant; but, upon the trial, it appeared that he was a servant of the liveryman who had been engaged to carry the stranger from the depot to the defendant's house. Before the note was signed the defendant stated that he had fears that the paper which he was asked to execute might turn out to be a note, and thereupon the stranger assured him that it was not, and was nothing but a contract of the nature already stated. The driver remained in charge of the horse and so near to the parties that he might have heard their conversation, and the note was signed and delivered in his presence. The note was partly written and partly printed, and the defendant did not request the boy in charge of the horse to read the same to him. The defendant

is a German by birth and a farmer.    Neither he nor his wife could at that time read English, written or printed, and his nearest neighbor lived about half a mile distant.    Before signing the paper the defendant consulted his wife as to its contents, and she informed him that she was unable to read it, and did not understand its meaning.    It was not disputed upon the trial but that the signature of the defendant to the note was procured by gross fraud and imposition, perpetrated by the person to whom he delivered it, and that the latter was acting in concert with the persons with whom the defendant had the first negotiations.

The jury were also justified in reaching the conclusion that when the defendant signed the note he believed it was a paper of a different character, and did not contain a promise to pay money to any one unconditionally.    The defendant admitted that he intended to execute an instrument which would contain a promise on his part of some kind, and that the form of the same and the extent of his liability was to be ascertained and measured by the writing itself. The general rule of law applicable to the case is that where a party is induced to sign a negotiable instrument by reason of fraud, artifice or deception practiced upon him by another, as to the nature of the instrument, and the maker signs the same innocently and under the belief that it is a contract of a different character, then there can be no recovery upon the bill or note, although the holder may be an innocent purchaser for value before maturity, unless the maker was guilty of laches or carelessness in omitting to read the same, or by some other means ascertaining the true nature and import of the instrument.    If, however, the maker was guilty of laches or negligence in this respect, he will be liable to a *bona fide* holder for value, who purchased the note before maturity.    (Dan. on Neg. Inst., § 850; *Chapman* v. *Rose*, 56 N. Y., 137; *Foster* v. *MacKinnon*, 38 Law Jour. [N. S.], 310; *Citizens' Nat. Bank* v. *Smith*, 55 N. H., 593; *Penn. R. R. Co.* v. *Shay*, 82 Pa., 202; Big. on Bills and Notes, 583.

In his charge to the jury, the learned judge stated the law applicable to the case, in conformity to both of the propositions.    Neither party excepted to these instructions.    The plaintiff's counsel now concedes their accuracy as general legal propositions.    His contention now is that, upon the undisputed facts, the plaintiff was

entitled to a verdict, and that it was error not to direct a finding in the plaintiff's favor, as requested on the trial.

As the plaintiff was a *bona fide* purchaser for value before maturity the burden of proof was cast upon the defendant to show that he had been induced to sign the note by false and deceptive representations, and that he was free from laches or negligence on his part. We think a case was made for the consideration of the jury, and that the question of the defendant's negligence was properly submitted to them for their determination. As the maker could not read the English language he was obliged to rely upon the representations made by the other party, or consult and ascertain its contents from some third person. His wife, who was present, could give him no information as she was unable to read the paper. It cannot be said, as we think, that it was negligence *per se* not to seek his neighbors and learn from them the contents of the writing. The subject matter of the negotiations was not of great importance, and the terms of the agreement assented to by the defendant were plain and could be readily and accurately expressed in writing by any person who could write and was accustomed to business. The nature and character of the paper intended to be executed must always be considered in determining the question of the defendant's negligence, so far as it is based on the omission to inquire of others for the purpose of ascertaining from them the contents of the writing. If a farmer, who could not read, should sell and deliver to a mill a load of grain and receive pay therefor, and should then be requested to sign a voucher in the miller's counting room, and should sign a paper prepared for that purpose and it turned out to be a negotiable instrument, could it be said that the farmer was guilty of negligence, as matter of law, because he did not seek some third person for the purpose of ascertaining the import of the writing? The case supposed is not like the one before us in all respects, but it has been stated for the purpose of illustrating that the question of negligence is not always one of law and often becomes a question of fact for the consideration of a jury.

The neglect to exhibit the paper to the boy in charge of the horse for the purpose of ascertaining from him its contents presents a more serious question. Because this was not done the plaintiff bases his whole argument, that the defendant was guilty of negligence as

matter of law. The evidence tended to show that this young man was the apparent companion or servant of the party with whom the defendant was transacting the business; and were it not for that cir_ cumstance we should be of the decided opinion that it was the duty of the defendant to consult him as to the contents of the paper. A statement had been made to the defendant, in the presence of the boy, as to the contents of the paper, and the defendant had no good reason for supposing, if a fraud was contemplated, that the boy could be used as a means of exposing it. The lad was then a stranger to the defendant, and the defendant had some reason for believing that these persons visited him for a common purpose. Within the rule, as laid down by the leading authorities, we are of the opinion that the defendant made a case which required the court to submit it to the jury, and it was for them to say whether he had executed himself in placing the confidence which he did in the other party to the transaction as to the contents of the instrument.

As the exception to the refusal to direct a verdict in the plaintiff's favor was ordered to be heard here in the first instance, we have no power on this motion to determine whether the verdict is against the weight of evidence. On the former trial of this case there was a verdict for the defendant, which this court set aside, for the reason that it then appeared by the case that the wife of the defendant could read English, and that he did not consult with her for the purpose of ascertaining the contents of the paper, and that the omission to do so was negligence *per se.*

The plaintiff cites us to our decision in the case of this *Plaintiff* v. *Ogden* (31 Hun, 452) as an authority in support of his argument that the exception was well taken. In that case it was held that the defendant therein, the maker of a note, was guilty of negligence in omitting to consult the members of his own family, who could read and were present at the time of its execution.

In sustaining the ruling of the trial judge in submitting the question of negligence to the jury. we do not intend to depart from the rules of law stated in our opinion in that case.

The plaintiff's motion for a new trial is denied, and judgment ordered for the defendant on the verdict.

SMITH, P. J., and BRADLEY, J., concurred; HAIGHT not sitting.

Motion for a new trial denied, and judgment ordered for defendant on the verdict.