## CANAJOHARIE NAT. BANK *v.* DIEFENDORF.

*(Supreme Court, General Term, Third Department.* February 7, 1889.)

1. NEGOTIABLE INSTRUMENTS—ACTIONS—BONA FIDE HOLDERS.
    In an action against the maker of a note by a bank, which claimed to be a *bona fide* purchaser from the payee, plaintiff's cashier, who was also a stockholder in the bank, testified that plaintiff paid for the note an amount nearly equal to its face value, and a draft payable to the order of the payee for such amount was introduced in evidence. The cashier also testified that he had no knowledge of any defense to the note. *Held* that, in the absence of any circumstances or evidence tending to contradict the statements of the cashier, a verdict should have been directed for plaintiff, notwithstanding the allegations of defendant that the note had been fraudulently obtained.

2. SAME—NOTES GIVEN FOR PATENT-RIGHT.
    The fact that such note was given for a patent-right, and that no statement as to the nature of the consideration was contained in the note as required by Laws N. Y. 1887, c. 65, in such cases did not render the note void in the hands of plaintiff.

Appeal from circuit court, Montgomery county.

Action by the Canajoharie National Bank against John F. Diefendorf. Plaintiff appeals from a judgment for defendant, and from an order denying a motion for a new trial.

Argued before LEARNED, P. J., and LANDON and INGALLS, JJ.

*Cook & Barnes* and *Matthew Hale*, for appellant.    *Z. S. Westbrook*, for respondent.

INGALLS, J.    This action was brought by the plaintiff to recover upon two promissory notes executed by the defendant, and which are as follows: "$1,000, ROCHESTER, N. Y., December 7, 1886.    Three months after date I promise to pay to H. D. Henderson or bearer one thousand dollars, at Spraker's National Bank, Canajoharie, N. Y., value received, with interest at the rate of ———— per cent. per annum.    JOHN F. DIEFENDORF;" and, "$1,000.    ROCHESTER, N. Y., December 7, 1886.    Three months after date I promise to pay to H. D. Henderson or bearer one thousand dollars, at Spraker's National Bank, Canajoharie, N. Y., value received, with interest at the rate of ———— per cent. per annum.    JOHN F. DIEFENDORF."    The notes were delivered to the payee therein named.    The defendant, by his answer, interposed the following defenses to the action:    The answer (1) denies the making of the notes; (2) sets up that the notes were given for a patent-right, and in violation of the provisions of chapter 65, Laws 1877, because they had not the words, "Given for a patent-right," written or printed across or upon the face thereof, above the signature; and also charges that the notes were obtained by fraud and deceit practiced on defendant by the payee, Henderson, and that plaintiff was not a *bona fide* purchaser or holder of the notes, but purchased the same with notice and knowledge that each of the same was not a good and honest note, and was fraudulent and invalid, and of the facts and circumstances under which the notes were assigned, etc.; (3) usury.

Upon the trial the plaintiff relied, substantially, upon the following evidence:    Charles C. Barnes, sworn for plaintiff, said: "Am one of plaintiff's counsel.    Know defendant.    Have seen him write.    Am acquainted with his handwriting.    [Witness shown two notes.]    The signatures to those notes, respectively, are in the handwriting of defendant.    *Cross-Examined by Z. S. Westbrook.*    They are the two notes in question in this case."    Notes offered, received, and read in evidence, marked plaintiff's "A" and "B."    They are set forth at length in the complaint, B in first cause of action, and A in second.    Adelbert C. Richmond, sworn for plaintiff, said: "Am now, and was in December, 1886, cashier of the Canajoharie National Bank.    Have been such upwards of twenty years.    It is a national bank.    [Witness shown plaintiff's Exhibits A and B.]    As cashier, I received those notes from H. D. Henderson, the payee named in them.    Received B, December 9, 1886, and A, December 10, 1886.    *Question.*    State transaction between Henderson and yourself as cashier.    *Answer.*    He brought note B to me, December 9th, and I discounted it at the Canajoharie National Bank, at the counter.    The note is indorsed by him.    I discounted it.    Gave him for it draft on Merchants' Bank of Albany.    [Paper shown witness.]    That is the draft I gave him.    [The draft made by the Canajoharie National Bank on the Merchants' National Bank of Albany, dated December 9, 1886, for $976.75, payable to order of H. D. Henderson, and signed by A. C. Richmond, cashier.    Indorsed by H. D. Henderson.    Offered and received in evidence, and marked "Plaintiff's C."]    That draft was paid by the plaintiff bank to Henderson.    It did not go through the Merchants' National Bank of Albany.    It was paid in cash the day following the day it was drawn at Henderson's request.    I gave him currency for it.    *Q.*    State transaction as to note Ex. A.    *A.*    That was presented by Henderson on December 10, 1886, for discount.    As cashier, I discounted it, and gave him therefor a $500 draft on Merchants' National Bank of Albany, and $469 in currency, making in all $969.    [Paper shown witness.]    That is draft I gave Henderson on that day.    [Draft being for $500, and similar to Ex. C.    Offered and received in evidence, and marked "Plaintiff's D."]    That draft was cashed by the bank at $500, and whole amount thereof paid to Hen-

derson, December 11, 1886. *Q.* At the time you discounted this paper, had you any knowledge or information as to the consideration of the paper, or circumstances under which it was issued? *A.* No, sir; not the remotest. *Q.* Had you any knowledge or information that it was given for a patent-right? *A.* No, sir. *Q.* Or for any interest in a patent-right? *A.* Never heard anything of the kind. *Q.* Had you any knowledge or information that it was claimed by the maker, Diefendorf, that he had any defense to the notes, or either of them? *A.* None whatever. *Q.* Were these notes presented at a time when the bank was open? *A.* Yes, sir. *Q.* And at the place where paper is usually presented for discount? *A.* Yes, sir." The cross-examination disclosed, among other things, that the capital stock of the bank was $125,000, of which the witness Richmond owned $25,000, and was at the time the notes were discounted a director thereof. Richmond was not impeached as a witness, nor was he contradicted in the statements which he made by any other witness. The defendant sought to discredit the transaction with the bank, by showing that he had been defrauded by other parties, who had obtained from him the notes in suit, and succeeded in obtaining the verdict of the jury in his favor.

An examination of the facts contained in the case has convinced us that such verdict was more the result of sympathy with the defendant than the exercise of sound judgment by the jury, based upon a consideration of the evidence which legitimately affected the plaintiff's case herein. The evidence upon which the defendant relied at the trial to defeat the recovery upon the notes, on the ground that their purchase by Richmond as the cashier of the bank was not in good faith, but under circumstances which should have created in his mind the suspicion, at least, that the notes had been obtained by fraud, was too uncertain, inconclusive, and unsatisfactory in its character to establish, in our judgment, even a well-grounded suspicion on the part of Richmond that there was any valid defense to the notes. The amount paid by the plaintiff for the notes was so near their face value as to repel any inference of bad faith, based upon inadequacy of price paid therefor, or any suspicion of dishonesty in regard to such purchase on that account. The evidence did not justify the jury in disregarding the testimony of Richmond, which they clearly must have done in order to reach the result arrived at by them. It is quite probable that they reasoned that Richmond, being a stockholder of the bank, was therefore interested pecuniarily in the purchase of the notes, and in collecting the money due thereon, and consequently that they were at liberty to discredit his evidence as a witness for that reason. This they were not justified in doing, as Richmond was not contradicted by any other witness, nor did the facts of the case even tend to disprove the truth of his statements in regard to the purchase of the notes, nor did his examination at the trial reflect unfavorably upon him as a witness. Under such circumstances, the jury could not legally reject the evidence of the witness, merely upon the ground that he had an interest in the controversy to the extent and of the character shown in regard to the witness Richmond. We have examined the cases cited by the learned counsel for the respondent upon this question, and are unable to give them the effect claimed by him for them, when applied to the facts of this case. *Kelly* v. *Burroughs*, 102 N. Y. 93, 6 N. E. Rep. 109.

The notes were not rendered invalid in the hands of plaintiff as a *bona fide* holder, in consequence of the omission to write thereon the words, "Given for a patent-right," as required by the Laws of 1887, c. 65; *Herdic* v. *Roessler*, 109 N. Y. 127, 16 N. E. Rep. 198. We are satisfied by the evidence that the plaintiff must be held to have purchased the notes in good faith, and without any notice or knowledge in regard to the consideration upon which they were executed by the defendant, or of the circumstances under which he parted with them; and having paid for the notes so nearly their face value, and hav-

ing purchased them before maturity, we are satisfied that the plaintiff made a case at the trial which entitled it to the verdict of the jury, and should have recovered the amount of the notes, with the interest thereon, and costs of the action. *Dalrymple* v. *Hillenbrand*, 62 N. Y. 5; *Chapman* v. *Rose*, 56 N. Y. 137; Story, Bills, (3d Ed.) § 188; *Hart* v. *Potter*, 4 Duer, 458. It is the misfortune of the defendant that he allowed himself to become the dupe of dishonest men, but that furnishes no reason for compelling the plaintiff to bear the consequences of the misfortune or folly of the defendant. To sustain this judgment, upon the facts disclosed, would be to reflect most unfavorably upon the value and security of commercial paper. The judgment must be reversed, and a new trial ordered, with costs to abide the event. All concur.