HANNAH JANE MARDEN, Respondent, *v.* ELLA M. DORTHY, JOHN F. DORTHY, HIRAM L. BARKER and THE MONROE COUNTY SAVINGS BANK, Appellants.

1. APPEAL — NON-REVIEWABLE QUESTION WHETHER FINDING OF FACT IS SUSTAINED BY EVIDENCE. Since the adoption of the present Constitution, the question whether a finding of fact is sustained by evidence, though one of law, is not reviewable by the Court of Appeals, when the Appellate Division has affirmed the judgment by a unanimous decision.

2. CONCLUSIVE FINDINGS OF FACT. When findings of fact have been affirmed by the Appellate Division in a unanimous decision, the Court of Appeals must accept them as they are in their fair scope and meaning, without adding to or taking anything from them, and, applying them to the case, the only question that can arise is whether they support the legal conclusions drawn from them by the courts below.

3. SCOPE OF CONCLUSIVENESS OF FINDINGS. The provision of the Constitution (Art. 6, § 9) and the statute (Code Civ. Pro. § 191), that no unanimous decision of the Appellate Division that there is evidence sup-

porting or tending to sustain findings of fact shall be reviewed by the Court of Appeals, applies not only to the facts affirmatively stated in favor of the successful party, but to those expressly or impliedly negatived against the party appealing.

4. REAL PROPERTY — CANCELLATION OF RECORDED DEED, BEARING. GENUINE SIGNATURE OF GRANTOR PROCURED BY ARTIFICE, AND MORT-GAGES MADE BY GRANTEE TO THIRD PARTIES FOR VALUE.  In an action brought to cancel, as fictitious and void, a recorded deed purporting to have been made by the plaintiff to her daughter, and two later mortgages upon the premises made by the plaintiff's daughter and son-in-law to third parties for value, it was expressly found by the trial court that the plaintiff never executed, acknowledged or delivered the deed and did not know of its existence until shortly before bringing suit; that no consideration therefor ever passed to her; that although the signature to the deed was genuine, the plaintiff signed her name without any knowledge or information that the paper was a deed of her premises or that it in any way affected her interest therein; that her signature was procured by her son-in-law by some trick or artifice unknown to the plaintiff; that the certificate of acknowledgment was false, and that the signature of the notary, though genuine, was obtained by the plaintiff's son-in-law in some way which did not appear, but without any acknowledgment by the plaintiff, and without her authority.  The plaintiff obtained a judgment canceling the mortgages as well as the deed, which was unanimously affirmed by the Appellate Division, and the defendants appealed to the Court of Appeals.  *Held*, that the conclusive findings of fact supported the legal conclusions of the courts below, and therefore required an affirmance of the judgment.

5. EFFECT OF ABSENCE OF FINDINGS OF NEGLIGENCE ON THE PART OF THE PLAINTIFF, OF THE STATUS OF THE DEFENDANT MORTGAGEES AS BONA FIDE PURCHASERS, OR OF THE PLAINTIFF'S ESTOPPEL.  The defendants sought a reversal on the grounds that although the plaintiff never intended to sign a deed, and did not know that she had, her genuine signature having been procured by some trick or artifice, yet it was the result of negligence on her part; that the defendants holding the two mortgages are *bona fide* purchasers, without notice or knowledge of the plaintiff's rights; and that the plaintiff is estopped by the spurious deed and the false record of the same from raising any question against the validity of the mortgages.  *Held*, that these propositions were unavailing, since they involved matters of fact, not only not found, but negatived by the decision on the trial.

6. NON-APPLICABILITY OF RULE AS TO LIABILITY OF THE ONE OF TWO INNOCENT SUFFERERS WHOSE ACT ENABLED THE WRONG TO BE DONE.  The rule, that where one of two innocent parties must suffer from a wrong committed by a third party, he must bear the loss whose action enabled the wrong to be done, has no application against the signer of a recorded deed, where the signature, although genuine, was procured by

trick or artifice, and the deed was never in fact executed, delivered or acknowledged; where the record was made by the production of a spurious paper to the notary, who was, in some way and by another trick or artifice, induced to attach his official signature to a false certificate; where there was no act or declaration on the part of the signer of the deed that enabled any one to deceive others by means of a false record; and where the persons who acted on the false record failed to make inquiry of the true owner, in possession of the premises.

7. FORGED INSTRUMENT NOT STRENGTHENED BY RECORDING.    Recording adds nothing to the legal efficacy of a false and fabricated, and therefore forged, writing, such as a deed, the signature to which, although genuine, was procured by trick or artifice, and bearing a false certificate of acknowledgment, having a notary's genuine signature, but also obtained by trick or artifice.

---

8. FINDING AS TO SIGNATURE PROCURED BY ARTIFICE, WITHOUT FINDING OF NEGLIGENCE.    A judgment canceling a recorded deed, and subsequent mortgages made by the grantee, affirmed unanimously by the Appellate Division, is sustained on appeal by a specific finding of fact that the plaintiff's signature to the deed was procured by one of the defendants "by some trick or artifice perpetrated by him, in some way or manner which does not appear and is unknown to the plaintiff," with no finding that the plaintiff was negligent.

9. ABSENCE OF ESTOPPEL.    The grantor in a deed which was not knowingly executed or voluntarily delivered by him is not estopped from alleging the fact that his signature was procured through fraud, trick and artifice, as against the grantee or the grantee's mortgagees; and a deed never delivered, but obtained without the knowledge or consent of the grantor, does not divest the grantor's title, and a subsequent purchaser or mortgagee from the grantee without notice for value will not be protected.

10. RECORDING ACT.    The Recording Act never was intended to be a protection to innocent purchasers or mortgagees against theft, forgery, fraud or duress.

*Marden* v. *Dorthy*, 12 App. Div. 188, affirmed.

(Argued May 1, 1899; decided October 3, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered December 23, 1896, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at a Monroe Equity Term.

The nature of the action and the facts, so far as material, are stated in the opinions.

*David Hays* and *Wm. B. Lee* for appellants Hiram L. Barker and the Monroe County Savings Bank. The conclusions of law of the trial court were erroneous; if the plaintiff was induced to sign the deed by some fraud of Dorthy, on whom she relied, she, and not the mortgagees, must suffer the consequences of that fraud. (*Chapman* v. *Rose,* 56 N. Y. 137; *Simpson* v. *Del Hoyo,* 94 N. Y. 189; *Valentine* v. *Lunt,* 115 N. Y. 496; *Simson* v. *Bank of Commerce,* 43 Hun, 156; 2 Jones on Real Prop. § 1316; *Page* v. *Krekey,* 137 N. Y. 307; *Lawrence* v. *G. I. Co.,* 51 Kan. 222; *Jordan* v. *McNeil,* 25 Kan. 459; *Gavagan* v. *Bryant,* 83 Ill. 376; *Briggs* v. *Jones,* L. R. [10 Eq.] 92; *Hunter* v. *Walters,* L. R. [11 Eq.] 292; L. R. [7 Ch. App.] 75.) The findings of the trial judge that the plaintiff was in possession, and his conclusion therefrom that the mortgagees may not be regarded as purchasers without notice, were erroneous. (*McNeil* v. *Jordan,* 28 Kan. 7; *Cook* v. *Travis,* 20 N. Y. 400; *Staples* v. *Fenton,* 5 Hun, 172; *Van Keuren* v. *C. R. R. Co.,* 38 N. J. L. 165; *Bloomer* v. *Henderson,* 8 Mich. 395; *Wilson* v. *Hicks,* 40 Ohio St. 418; 3 Washb. on Real Prop. 337; 1 Jones on Mort. § 597; *Pope* v. *Allen,* 90 N. Y. 298; *Brown* v. *Volkening,* 64 N. Y. 82.) Substantial errors were made by the trial judge in the reception and in the exclusion of evidence. (*Lawrence* v. *Farley,* 24 Hun, 293; *Geissmann* v. *Wolf,* 46 Hun, 289; *Kain* v. *Larkin,* 131 N. Y. 300; *Foote* v. *Beecher,* 78 N. Y. 155.)

*John Van Voorhis* for appellants Ella M. Dorthy and John F. Dorthy. The evidence given by the plaintiff against the objection and exception of the defendants, in the nature of a confession of the execution of the papers and its avoidance, was all erroneously received. (*Chu Pawn* v. *Irwin,* 82 Hun, 607; *Beecher* v. *Schuback,* 1 App. Div. 359; *Kley* v. *Healy,* 149 N. Y. 346; *Elting* v. *Dayton,* 17 N. Y. Supp. 849.)

*Theodore Bacon* for respondent. So far as the Dorthys are concerned, if the facts found in the decision existed, the relief directed by the judgment necessarily followed them,

The two mortgagees, the savings bank and Mr. Barker, are in no position to benefit by the crime of their mortgagors. (*Rapps* v. *Gottlieb*, 142 N. Y. 164; *Phelan* v. *Brady*, 119 N. Y. 587; *Kirby* v. *Tallmadge*, 160 U. S. 379; *Boyes* v. *Chandler*, 160 Ill. 394.) The plaintiff's case against the mortgagees might have rested upon the proposition, if the fact had existed, that she made the deed in question, but that it was procured from her by fraudulent representations of Dorthy, and was, therefore, not void, as in a case where the signer had no intention of signing any such paper, but simply voidable, on the ground that it was procured by fraud. But upon such a fact it does not rest, for the facts found by the court are the wholly independent and distinct facts that she never signed, sealed, delivered or acknowledged the execution of the paper purporting to be a conveyance from her to Mrs. Dorthy. (2 Black. Comm. 304–307; *Doorley* v. *O'Gorman*, 6 App. Div. 593; *Bank of Havana* v. *Magee*, 20 N. Y. 355; *Briggs* v. *Langford*, 107 N. Y. 680; *Hill* v. *Hoole*, 116 N. Y. 299; *Rapps* v. *Gottlieb*, 142 N. Y. 164.)

O'BRIEN, J. The plaintiff in this action invoked the jurisdiction of a court of equity to cancel certain instruments purporting to be conveyances of real estate, which she alleges are fictitious and void. It appears from the allegations of the complaint that at the time of the transactions stated therein, and for many years prior thereto, the plaintiff was the owner and in possession of the dwelling house and lot where she resided and still resides. The relief demanded is that three written instruments of record purporting to affect her title to the property be declared void and canceled. It is charged that the three instruments were fictitious and fraudulent. They were described as purporting to be (1) A deed bearing date and purporting to have been executed and acknowledged on the 31st day of October, 1892, and recorded December 12th, 1892, from the plaintiff to her daughter, the defendant Ella M. Dorthy, the wife of the defendant John F. Dorthy.

(2) An instrument purporting to be a mortgage, covering this house and lot, made by the defendant Ella M. Dorthy and her husband to the defendant, the Monroe County Savings Bank, for $5,000, bearing date May 6th, 1893, and recorded May 8th, 1893.

(3) An instrument purporting to be another or second mortgage on the same premises, made by the same parties, bearing date and recorded November 19th, 1894, to the defendant Hiram L. Barker, to secure the payment of $1,300. It is alleged that on the second day of April, 1895, the savings bank commenced an action to foreclose the mortgage first mentioned, in which action a notice of pendency was filed. It does not appear that the plaintiff was made a party to that action.

The present action was commenced about a month after that by the bank, and the plaintiff avers that she never executed or delivered the paper purporting to be a deed to her daughter; that she never acknowledged it, and never saw or heard of it until a few days before she instituted this action. It is further stated that she never knew or heard of the two mortgages above described until the same time, and that the three instruments were absolutely and wholly fictitious and fraudulent.

These vital allegations concerning the execution of the deed, and the execution of the two mortgages, were denied by the answers of the several defendants. The issues in the case, important as they certainly appear to be, were all issues of fact and presented nothing but questions of fact for trial. The decision and findings of the trial court were in favor of the plaintiff, and the three instruments were set aside. It is distinctly found that the plaintiff never executed or acknowledged the deed; that she never knew of its existence until the time above stated; that it was never delivered to her daughter, and that the latter never knew of its existence until the time it was discovered upon record by her mother, the plaintiff, just before the commencement of this action. Moreover, it was found that the certificate of acknowledg-

ment attached to the instrument first described was false, and
that the signature of the notary, though genuine, was obtained
in some way not appearing, but without any acknowledgment
by the plaintiff to the officer, or any one else. These findings
having been unanimously affirmed at the Appellate Division
are decisive of this appeal. Even if they were not so well
sustained by the proofs in the case as they appear to be, the
result, so far as this court is concerned, would necessarily be
the same, since we are not permitted to question them, or
even look into the evidence upon which they are based. The
jurisdiction of this court is limited to questions of law, and
in the present case the findings having been affirmed in the
court below in a unanimous decision, we must assume that
they are sustained by evidence. Since the adoption of the
present Constitution the question whether a finding of fact, or
a verdict upon issues of fact, is sustained by evidence, though
in its very nature one of law, is not reviewable here, when
the court below has decided unanimously that the judgment
should be sustained. This one question of law has, therefore, in
such cases, been withdrawn from the cognizance of this court,
as well as all questions of fact. We are not at liberty to disturb
a judgment in such a case by giving to the findings of fact a
strained or unwarrantable construction, any more than we are
to set them aside upon a direct review. We must accept the
findings as they are in their fair scope and meaning, without
adding to or taking anything from them, and, applying them
to the case, the only question that can arise is whether they
support the legal conclusions drawn from them by the courts
below. These propositions would be quite sufficient to dis-
pose of this case, but nevertheless the learned counsel for the
defendants contend that upon these findings the judgment
should have been in their favor. It is quite obvious that the
argument in support of this contention not only ignores the
conclusive character of the findings as made, but assumes
other facts by way of defense not found or even alleged. The
decision of the courts below was in favor of the plaintiff gen-
erally, and, hence, we are bound to assume not only that all

facts alleged by the plaintiff are sustained by evidence, but
that all facts alleged by the defendants by way of defense, not
found, have been rejected or expressly negatived.    The Con-
stitution and the statute which declare that no unanimous
decision of the Appellate Division that there is evidence sup-
porting or tending to sustain findings of fact, shall be
reviewed in this court, apply not only to the facts affirma-
tively stated in favor of the successful party, but to those
expressly or impliedly negatived against the party appealing.
(*Szuchy* v. *Hillside Coal & Iron Co.*, 150 N. Y. 219 ; *Amherst
College* v. *Ritch*, 151 N. Y. 282.)  It is quite important,
therefore, in view of the contention in behalf of the defend-
ants, to state with more particularity just what facts have been
found for the plaintiff, and what facts relied upon by the
defendants have been negatived.

   The most important finding for the plaintiff is the fourth,
the first paragraph of which is in the following words:
" *Fourth.*  That the plaintiff never executed or acknowledged
the said instrument, and never knew of the existence thereof
until sometime in the month of April, 1895, when a rumor
came to her that such an instrument had been made, which
was confirmed by an examination of the record thereof, in
the said Monroe county clerk's office, made by her on or about
the 23d day of May, 1895.   That although the signature
affixed to said instrument is genuine, the plaintiff signed her
name to the paper upon which said instrument was written
without any knowledge or information that the paper was a
deed of her said premises, or that it was an instrument which
in any manner affected her interest in said premises.   The
said plaintiff never at any time had any intention of selling,
conveying or incumbering her said premises, and her signa-
ture to said paper writing purporting to be a deed of her said
premises was procured by the defendant John F. Dorthy by
some trick or artifice perpetrated by him in some way or
manner which does not appear and is unknown to the plain-
tiff."   The finding then proceeds to state : " That said plain-
tiff never acknowledged the execution of said instrument in

any manner and never appeared before the officer, whose certificate of her acknowledgment is affixed to said instrument, for the purpose of acknowledging the execution thereof. That the signature to said certificate of acknowledgment is genuine, but the same was in some manner obtained by the said defendant John F. Dorthy, in what way does not appear, but without any acknowledgment by the plaintiff to the said officer, and without her authority given in any manner whatever. That said instrument was never delivered to the defendant Ella M. Dorthy, and she never authorized any one to receive the same for her, and no consideration for or on account of said instrument ever passed between the plaintiff and the said defendant Ella M. Dorthy, or between the plaintiff and said defendant John F. Dorthy. The said defendant Ella M. Dorthy never had any knowledge of the existence of the said pretended deed of the plaintiff to her."

It would seem to be a difficult problem which the learned counsel for the defendants have assumed to elucidate, since it is nothing less than an effort to show that their clients, and especially the bank, have become vested with an interest in the plaintiff's real property under what they call a deed, which, it is conclusively settled, the plaintiff never executed, acknowledged or delivered. It must be admitted that to sustain such a position requires both courage and ingenuity, and, accordingly, they have with commendable industry constructed an argument based upon three propositions of fact: (1) That, although the plaintiff never intended to sign a deed, and did not know that she had, her genuine signature appearing on the paper having been procured by some trick or artifice, yet it was the result of negligence on her part. (2) That the defendants holding mortgages are *bona fide* purchasers without notice or knowledge of the plaintiff's rights. (3) That the plaintiff is estopped by the spurious deed and the false record of the same in the clerk's office from raising any question against the validity of the two mortgages.

The counsel in framing the argument have evidently overlooked or ignored a very important consideration, and that is

that every one of these propositions involved matters of fact, not only not found, but negatived by the decision at the trial, so that the very basis of the whole argument is swept away. There is no finding, and there was no request to find, either that the plaintiff was negligent in placing her signature upon the paper, or that the defendants holding mortgages were *bona fide* purchasers without notice of the plaintiff's rights, or that they relied upon or were misled by any act or word on her part. On the contrary, the plaintiff having had judgment in her favor on the whole case, it has been found, impliedly, that she was not negligent; that the defendants are not *bona fide* holders without notice, and that there was no act or word on her part upon which the defendants relied, and hence no estoppel. These findings having been unanimously affirmed by the court below, it is very difficult to understand how there can be any question of law before us for review. It was never permissible in this court to go behind the findings into the evidence for some fact upon which to base a reversal, and to do it now in this case, after a unanimous decision below, is simply to disregard the Constitution. If we can go into the evidence in such a case for new facts to overthrow or neutralize those found, the purpose of the constitutional provision can always be defeated or evaded.

It is urged that since the court found that the signature of the plaintiff to the instrument was genuine, that she, therefore, signed a deed of her property, and having done that, and the defendants having advanced money on the faith of the false record, are entitled to be protected by a court of equity. The fallacy of the whole argument is found in the assumption that the genuine signature of the plaintiff was *made to a deed*, whereas the finding is that she never executed, acknowledged, delivered or was aware of the existence of such an instrument; that she never intended to execute a deed, or any other instrument affecting her title to the property. These findings plainly mean that she never signed a deed, since if she did she must have executed it, and the fact that her signature is genuine is entirely consistent with the

previous part of the finding. A party cannot make a deed without some assent of the will. It must be a conscious act, accompanied by an intention, and every one of these elements are wanting in this case as appears from the finding. The genuine signature of a party may be procured by some trick or device to a piece of blank paper, and a deed or other instrument subsequently written over it without his knowledge. It may be that a party could procure another to sign a paper by means of hypnotic suggestions or influences, but a signature procured under such circumstances could have no more effect than if made by the hand of the hypnotiser. It does not follow in such a case that because the signature is genuine that the party signed a deed or other contract. It is simply a spurious paper and of no more effect than any other forgery.

But the argument wholly ignores the other part of the finding, that the instrument was never acknowledged or delivered, and that the grantee named therein was not herself aware of its existence. The act of signing a deed is only one step in the process of changing the title to real property. The instrument is perfected only by delivery, and in this case that most important fact is negatived by the findings. No one can now claim that the grantee in the spurious paper ever received any title whatever under it, and, of course, she could not convey any better title through the mortgage than she had herself, unless some estoppel was established, and none was found. So that, even if the court had found that the plaintiff signed the deed of her house, instead of finding, as it did, that she did not, the other fact, that it was never delivered, would be a complete answer to the argument in support of the mortgages, since they must rest entirely upon the deed.

The learned counsel has cited cases in this court, and in other jurisdictions, which he claims sustain his contention. (*Chapman* v. *Rose*, 56 N. Y. 137; *Simpson* v. *Del Hoyo*, 94 N. Y. 189; *Valentine* v. *Lunt*, 115 N. Y. 496; *Simson* v. *Bank of Commerce*, 43 Hun, 156; affirmed, 120 N. Y. 623; *Page* v. *Krekey*, 137 N. Y. 307; *Lawrence* v. *G. I. Co.*, 51

7

Kan. 222; *Gavagan* v. *Bryant,* 83 Ill. 376; *Hunter* v. *Walters,*
L. R. [11 Eq. Cases] 292; L. R. [7 Ch. App.] 75; *Briggs* v.
*Jones,* L. R. [10 Eq. Cases] 92; *Heyder* v. *E. B. L. Assn.*, 42 N.
J. Eq. 403.) The distinction between these cases and the one
at bar is so broad and so plain that it is difficult to see how it
could be supposed that they had any application. In all of
them it will be seen that the party sought to be charged con-
sciously and voluntarily executed a contract, obligation or
conveyance of some kind or character, and for some purpose.
There was an intention to execute, and an actual execution of
the instrument, in every case, followed by an actual delivery.
There was the assent of the will to the use of the paper or
the transfer, as the case may be, though that assent may have
been induced by fraud, mistake or misplaced confidence. In
such cases when the obligation is put in circulation, or when
some instrument which clothes another with the indicia of
title to property is used by him, the equities of innocent par-
ties must be considered. But these principles have no appli-
cation to this case, for the plain reason that, upon the findings,
the plaintiff never intended to execute, and did not sign or
deliver, any obligation, contract or conveyance whatever.
There is absolutely no act of the plaintiff upon which any
right or equity can be based in favor of the mortgagees. It
is doubtless true that a fraudulent grantee of real property
may create a valid incumbrance upon it in favor of innocent
parties, since, as to such parties, he has the title and has been
clothed with power to deal with the property. When the
owner of land executes and delivers to another a deed of it,
the title passes to the grantee named therein, although the
former was induced by fraud to execute and deliver the instru-
ment. The deed is not void, but voidable, and, until set aside,
it has the effect of transferring the title to the fraudulent
grantee, and the latter, being thus clothed with all the evi-
dences of good title, may incumber the property to a party
who becomes a purchaser in good faith.

But in this case it would be preposterous to assert upon the
facts found that the plaintiff's daughter, whose name appears

as grantee in the spurious deed, ever had any title, or that she was ever clothed by any one with the slightest power or authority to mortgage the property. In the face of the findings that the plaintiff never executed, acknowledged or delivered the deed, no one is willing to assert that she ever had any title to convey. That the cases cited have not the slightest application to this case is, therefore, to my mind, a proposition too plain for argument.

Nor is there any basis for the proposition that the plaintiff is estopped from assailing the mortgages, any more than there is for questioning the deed. There was no act or declaration on the part of the plaintiff to create an estoppel. It does not appear that the party who took the mortgages ever saw the genuine signature of the plaintiff, or acted upon it. What they acted upon was a false and fictitious record, which the plaintiff had no hand or part in making. That was made possible only by the genuine signature and false certificate of the acknowledging officer, who, though innocent of any wrong, had been imposed upon, as the officers of the bank were, subsequently. It is manifest that the genuine signature of the plaintiff played no part in the creation of the false record upon the faith of which the defendants loaned their money, since even the notary did not act upon it. No one who had anything to do with the transaction seems to have known or seen the signature, and for all the purposes of the case, in view of the findings, it might as well have been simulated.

The rule that where one of two innocent parties must suffer from a wrong, he must bear the loss whose action enabled the wrong to be done, has no application to the case. In a recent case in this court it was shown that this rule, at best, is one applicable only in peculiar emergencies, and the limitations upon it were very clearly pointed out by Judge FINCH. (*Rapps* v. *Gottlieb*, 142 N. Y. 164.) If we were to ask what it was that the plaintiff did to enable the wrong in this case to be committed, it would be difficult for the learned counsel to answer it. The only answer to be found in his argument is that she signed the deed; but it has been shown, I think, that

this proposition has no real foundation, in fact or in law. Moreover, although the plaintiff's signature to the paper is genuine, procured by some trick or artifice, it was never delivered or acknowledged by the plaintiff, and these two acts must be imputed to her before any one can say that she, in any degree, contributed to the success of the fraud. There was no act or declaration on her part that enabled any one to deceive third parties by means of a false record. That record was made by the production of a spurious paper to the notary, who was, in some way and by another trick or artifice, induced to attach his official signature to a false certificate.

It is further found that during all the time covered by these several transactions the plaintiff was in possession of the real property in question. Her name appeared in large letters on the front door and on the horse block in front of it, and while the possession of the plaintiff may have been somewhat obscured by the presence in the house with her of the son-in-law and his wife, this circumstance cannot change the legal effect of possession as notice of her rights to all the world. (*Phelan* v. *Brady*, 119 N. Y. 587 ; *Holland* v. *Brown*, 140 N. Y. 344; *Kirby* v. *Tallmadge*, 160 U. S. 379.)

I assume that no one will claim that the plaintiff changed or lost the possession of her house when she took in her daughter and son-in-law to live with her. In the case of *Mygatt* v. *Coe* (147 N. Y. 456) we held that the possession of a married woman of her house was not affected by the circumstance that her husband lived with her and attended to the property, including the payment of taxes. Assuming that case to be still law, it is difficult to perceive how the plaintiff's possession was affected by the presence in the house with her of her daughter and her daughter's husband. The possession in fact and in law was still in the plaintiff, and that possession was notice to all the world of her rights. The parties who made loans on the faith of a false record, had they but inquired of the plaintiff all the facts would have been revealed. They all resided in the same city, and all that was necessary for the mortgagees to do in order to defeat the

fraud and save themselves from loss, was to visit the premises and take note of what such a visit would disclose. In omitting such a plain precaution the parties who proposed to loan money to Dorthy on the faith of a fictitious paper title have deprived themselves of the right to say that the plaintiff's genuine signature was the primary cause of their loss. If it be said that the plaintiff was not sufficiently vigilant in guarding against the fraudulent use of her signature by her son-in-law, as a means of depriving her of her property, though that fact is negatived by the findings, it must also be said that the mortgagees were quite as remiss in putting faith in a fictitious record when they could have discovered the fraud about to be practiced upon them by calling at the plaintiff's house. The defendants cannot be heard to claim that they were not bound to make any inquiries of the true owner, while insisting at the same time that she is bound by any trick or artifice by means of which her signature was made to appear on a false paper.

The case has thus far been discussed strictly upon the findings of the trial court, unanimously affirmed on appeal, but the defendants' contention would not be aided much if it is viewed in the broadest aspect, or enlarged by a departure from the findings. I have said that the defendants' claim rests upon a spurious or fabricated paper, but this expression does not describe the true character of the instrument. It was simply a forgery in every legal or moral aspect in which it can be considered. That crime is defined by the common law to be the fraudulent making of a writing to the prejudice of another's rights (4 Black. Com. 247), or the making *malo animo* of any written instrument for the purpose of fraud and deceit. (2 East P. C. 852.) The false making of an instrument which purports on its face to be good and valid for the purpose for which it was created, with the design to defraud. (1 Leach, 366 ; Black's Law Dic. 508.) The false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. (2 Bish. Crim.

Law, § 523.) The fraudulent making of an instrument in writing to the prejudice of another's rights. (*People* v. *Cady*, 6 Hill, 490 ; *People* v. *Shall*, 9 Cowen, 778 ; *People* v. *Harrison*, 8 Barb. 560 ; *Harris* v. *People*, 9 Barb. 664.) So it is held that forgery may be committed by fraudulently procuring the signature of another to an instrument which he has no intention of signing. (*State* v. *Shurtliff*, 18 Me. 368 ; *Gregory* v. *State*, 26 Ohio St. 510 ; *Com.* v. *Foster*, 114 Mass. 311.) The true character of the instrument which is the sole basis of the defendants' contention is well illustrated by the case of the *State* v. *Shurtliff* (*supra*). In that case a party agreed with another to sell to him one acre of his farm, and the intended grantee procured a draft of a deed describing the one acre intended to be conveyed, and presented it to the grantor who examined it and found it correct. The execution of this deed was, however, delayed and the draft remained with the grantee, who afterwards fraudulently procured the draft of another deed which covered and described the grantor's whole farm, and presented it to the latter for execution as the deed before examined, and it was executed and delivered. The grantee was convicted of forgery, and upon a review of the case upon appeal the court said : " Forgery has been defined to be a false making, or making *malo animo*, of any written instrument for the purpose of fraud and deceit. (2 Russ. 317, and authorities there cited.) The evidence fully justifies the conclusion that the defendant falsely made and prepared the instrument set forth in the indictment, with the evil design of defrauding the party whose deed it purported to be. It is not necessary that the act should be done in whole or in part by the hand of the party charged. It is sufficient if he cause or procure it to be done. The instrument was false. It purported to be the solemn and voluntary act of the grantor, in making a conveyance, to which he had never assented. The whole was done by the hand, or by the procurement, of the defendant. It does not lessen the turpitude of the offense that the party whom he sought to defraud was made in part his voluntary

agent in effecting his purpose. If he had employed any other hand, he would have been responsible for the act. In truth the signature to that false instrument, in a moral and legal point of view, is as much imputable to him as if he had done it with his own hand. The art and management has no tendency to mitigate the charge, and the opinion of the court is, that the crime of forgery has been committed. When the false making, with an evil design, is proved artful subterfuges in defense have been disregarded, of which many of the cases cited for the government are illustrations."

It must be admitted that the case from which this quotation is taken was not nearly so rank in its general features as the case at bar. The grantor in that case intended to execute a deed, and it was executed and delivered, and, moreover, it was not infected, as the instrument in this case is, with the vice of a false certificate of acknowledgment. So that when the instrument under which the defendants now claim was placed among the public records, it was nothing but a forgery. It was not only a forgery at common law, but a forgery by statute. The term "forgery" includes now, as it always did, the false making of a written instrument (Penal Code, § 520), and under section 521 it is forgery to utter or put off as true, with intent to defraud, a forged deed, knowing it to be forged. Placing the so-called deed in this case upon record, with intent to defraud, was an "uttering or putting off as true," within the meaning of the statute. (*Paige* v. *People*, 3 Abb. Ct. App. Dec. 439.) Moreover, a false certificate of an acknowledging officer to an instrument purporting to be a deed, that the same was acknowledged by a party thereto, is forgery under section 510 of the Penal Code, and while the absence of knowledge or a criminal intent on the part of the officer would absolve him from liability, yet that circumstance cannot, of course, change the character of the instrument of which the certificate is an essential part, or make it any the less a forgery.

That the certificate attached to the paper in question was false, is not, and cannot be, denied. It is found that the party

to whom the defendants loaned money upon fictitious mortgages procured the officer to make the false certificate by some trick or artifice, and by section 29 of the Penal Code one who directly or indirectly induces or procures another to commit a crime is a principal. (*People* v. *Fitzgerald*, 156 N. Y. 253; *People* v. *McKane*, 143 N. Y. 455.)

The fact that a false and fabricated writing of this character is deposited in a public office for record, and is actually recorded, can add nothing to its legal efficacy. The Recording Act applies to genuine instruments and not to forged ones. (*Albany Co. Savings Bank* v. *McCarty*, 149 N. Y. 71.) It may be that the actual record of such a paper may deceive the unwary, but that circumstance does not change the legal rights of any one. A bank may loan money upon the security of a pledge or mortgage of personal property in the possession of the thief who has stolen it, and the loan may be made in good faith on the honest belief that the thief who has the possession has the title; but this would not prevent the real owner from pursuing his property and taking it wherever he could find it. (*Knox* v. *Eden Musee Co.*, 148 N. Y. 441.) It would not help the bank in that case to allege, as the defendants in this case allege, that it was a *bona fide* purchaser. It is legally impossible for any one to become a *bona fide* purchaser of real estate, or a purchaser at all, from one who never had any title, and that is this case. It is equally impossible to construct an estoppel against the real owner upon a forged instrument, placed upon record without the authority of any one, and, of course, the paper in question was no more entitled to record upon the false certificate than if it contained no certificate whatever. Void things are as no things.

This fabricated writing and false record, it is said, has invested the defendants, holding fictitious mortgages, with the character of *bona fide* purchasers of real estate, and so has the effect in law of divesting the plaintiff of the title to her house and transferring it to the defendants; or if this proposition should seem to be too drastic, then we are asked to hold that the plaintiff is estopped from raising any question with

respect to the validity of the paper, since she was the involuntary victim of crime. It is said that since some one must suffer it is better that the plaintiff should lose her house than that the bank should lose its money. I have stated at, perhaps, undue length some of the reasons that constrain me to reject the argument. It has always been supposed that real property could not be the subject of larceny, but this is evidently a mistake, if it be true, as the defendants' counsel claims, that the false papers which the judgment in this case has declared void and set aside, are to be given such legal effect as to divest the plaintiff of her property and convey it to the defendants. In that case the process of stealing real estate, if I may be permitted to use that expression, will be very simple and comparatively safe. All that will be necessary for the criminal to do in order to feloniously appropriate to his own use the real property of another, is to fabricate a deed that shall contain the signature of the true owner, genuine if possible, by any trick or artifice, but if not, then simulated, since that will be just as good. The next step will be to procure a notary to attach to it a false certificate that the owner acknowledged it before him, and then file it in the clerk's office. It will not be necessary that the true owner should ever see the paper or deliver it to any one. If the grantee named in this false paper should be able to find a bank or an individual willing to loan money on the faith of such a record as Dorthy did in this case, the theft will be complete, since the title of the true owner will be extinguished by the *bona fide* intentions of the deluded money lender, or the owner will be estopped by reason of the confidence which it is said may have been reposed in the record of a crime.

The proposition that a person, or a bank, engaged in loaning money, may, if ignorant of the real facts, rely upon a falsehood placed upon record by criminal means, to the prejudice of the rights of the true owner of real estate, must open the door for the destruction of all titles, and make it much easier for the criminal to purloin real than personal

property. It is said that the false deed in this case was *duly* recorded, but surely this must be an inadvertence, since it is impossible to conceive that a writing, purporting to be a deed, but never executed, acknowledged or delivered, could be duly recorded. The act of the registrar in copying on his books a forged instrument, deposited with him as part of a criminal scheme, cannot very well be called *duly recording* a conveyance of land.

So it is said that the presence of the plaintiff's genuine signature on the paper rendered the fraud possible, but this assertion is manifestly without foundation. Even if it could be held that a woman who happens to own a house is bound by her signature to such a paper, by whatever trick or artifice procured, still, since she never delivered the paper, or in any way authorized it to be put in circulation, and as she never acknowledged it so as to entitle it to be recorded, it is very difficult to see what connection her signature has with the acts of the defendants in taking the mortgages from Dorthy. The record found in the clerk's office, upon which the defendants say they relied, was simply the result of a crime, and, if they were deceived by it, there is no principle of law or equity that will permit them to make their loss good from the plaintiff's property. They are the victims of a criminal contrivance in which they put faith, and they must seek redress from the criminal who conceived and executed the fraud.

The judgment of the courts below is right and should be affirmed, with costs.

HAIGHT, J. It appears to me there are three fundamental propositions upon which the law is well settled that stand in the way of a reversal.

This case was tried before the court, who makes specific findings of facts and conclusions of law. The judgment of the Special Term was unanimously affirmed in the Appellate Division. Under the Constitution this settles the facts to be as found. The trial court found that the plaintiff's signature to the deed was procured by John F. Dorthy " by some trick

or artifice perpetrated by him in some way or manner which does not appear and is unknown to the plaintiff." There is no finding that she was negligent, and I do not understand that we now have the power to find negligence on her part. If negligence is to be inferred from the facts here found, it must of necessity be inferred as a matter of law in every case where the signature of one person is procured through trick or artifice, no matter what the condition, whether aged or blind.

In the second place, I do not understand the facts as found to constitute an estoppel. The plaintiff's signature to the deed was procured through some trick or artifice, she not knowing that she was signing a deed. In order to constitute an estoppel the act must be voluntary or intended. If a highwayman should point a loaded revolver at the head of a person and compel the signing of an instrument through fear, such person would not be estopped from afterwards alleging the fact that his signature was procured through duress, and I see no reason why the same principle should not apply where the signature is procured through fraud, trick and artifice. In *Trustees* v. *Smith* (118 N. Y. 634–640) it is said, that it is a voluntary act calculated to mislead and which actually did mislead that constitutes an estoppel. In *Barnard* v. *Campbell* (58 N. Y. 73) ALLEN, J., in speaking upon the subject of an estoppel says: "He must have parted with possession of his property with *intent* to pass the title to the wrongdoer, thus giving him the apparent right of disposal." In *Wilcox* v. *Howell* (44 N. Y. 398–402), in speaking of the doctrine of estoppel, EARL, C., says: "It would be carrying this doctrine to a preposterous extent to hold that a party is estopped from claiming that the very instrument claimed to estop him was obtained from him by fraud." In *Henry* v. *Carson* (96 Indiana, 412) it was held that a deed never delivered, but obtained without the knowledge or consent of the grantor, does not divest the grantor's title, and a subsequent purchase from the grantee without notice for value will not be protected. (See, also, *Ford* v. *James*, 4 Keyes, 300; *Rapps*

v. *Gottlieb,* 142 N. Y. 164; *People* v. *Bank of North America,* 75 N. Y. 547; *McCaskill* v. *Conn. Savings Bank,* 60 Conn. 300; *Tisher* v. *Beckwith,* 30 Wisconsin, 55; *Ogden* v. *Ogden,* 4 *Ohio St.* 183; *Brant* v. *Virginia Coal and Iron Co.,* 93 U. S. 326; Article by Thomas N. Cooley, 4 American Bar Association Reports, 199.)

Finally, I do not understand that an innocent purchaser or mortgagee under the Recording Act gets a better title than he otherwise would have acquired had it not been for the provisions of the act, except in one instance, and that is, a failure to comply with the statute in having a deed or mortgage recorded so as to operate as a protection to innocent purchasers and mortgagees. The Recording Act, as I understand the authorities, never was intended to be a protection to innocent purchasers against theft, forgery, fraud or duress. (Code C. P. section 936; *Ritter* v. *Worth,* 58 N. Y. 627; *Lawrence* v. *Conklin,* 17 Hun, 228; *Taylor* v. *Davis,* 72 Missouri, 291; *Gould* v. *Wise,* 97 California, 532; 2 Jones on Real Property, section 1256, and authorities above cited.)

GRAY, J. (dissenting). This judgment should be reversed. Under the facts, as we must take them, it is a hard case of fraud practiced upon the plaintiff, whereby she was dispossessed of the title to her property, and, as between her and her grantee, doubtless the grant should be set aside. But a different principle operates, where it is sought to attack the rights of the mortgagees. Having in good faith loaned their moneys upon the faith of the record title of the mortgagors, they are entitled, in my opinion, to be protected. The plaintiff should be deemed to be bound by her act and to be estopped from denying it, as to them. Her signature to the deed is genuine and the notarial certificate of her acknowledgment is, also, genuine. The deed was, therefore, entitled to be recorded as a conveyance of real estate and, however open to attack as between the parties, surely the Recording Act may be relied upon to some extent by the *bona fide* mortgagee. Of course, we are bound by the facts, as found by

the trial court and affirmed by the Appellate Division, and we must assume that the plaintiff's signature was procured by trickery and that she never intended to convey her property, and, also, that she did not acknowledge the deed before the notary; but those facts, as applied to the case of *bona fide* mortgagees, do not compel the legal conclusion that their mortgages should be set aside. They show that the plaintiff by her own act, however procured, enabled the Dorthys to offer the security of a record title for the loans of the appellants' moneys. The deed to them was not void. It was only voidable by force of the facts proved with respect to its making; but its avoidance could only be decreed, under generally settled rules, subject to the intervening equities of mortgagees in good faith. To hold otherwise, is to introduce the element of doubt and insecurity into transactions of enormous magnitude. It seems to me to be just such a case as is contemplated by the equitable rule, that, where one of two innocent parties must suffer from the perpetration of a fraudulent act, he who enabled the act to be done must suffer the loss. The facts, as found in favor of the plaintiff, serve only to make a case for the application of this rule.

I cannot think that it would be a safe precedent to set, to hold that a grantor of property may come into court and nullify the claim of a *bona fide* mortgagee, who has loaned his moneys upon the faith of a record title in the mortgagor, which is rendered vulnerable by reason of the deceit of the grantee in obtaining his deed. The sentimental view is as little just as it is legal.

From the fraud practiced upon her by her trusted son-in-law, the plaintiff and not the mortgagees should suffer, and, therefore, so far as the latter are concerned, this judgment should be reversed.

Bartlett, J. (dissenting). This action was brought to set aside a deed purporting to have been made by the plaintiff to the defendant Ella M. Dorthy, of certain real estate in the city of Rochester, also to set aside two mortgages upon the

same real estate, executed by Ella M. Dorthy and her hus-
band, John F. Dorthy, one to the Monroe County Savings
Bank and the other to Hiram L. Barker.

Ella M. Dorthy is the daughter of the plaintiff, and the
wife of the defendant John F. Dorthy.

The Special Term set aside the deed and mortgages as
prayed in the complaint and the Appellate Division have
affirmed the judgment.

The findings of the Special Term are in part as follows:
The plaintiff became a widow in 1891 and received title from
her husband of the real estate in question; her family at that
time consisted of herself and daughter Ida; the latter married
on the 27th day of October, 1892, and removed to Massachu-
setts.   Prior to this, and in contemplation of the marriage,
the plaintiff invited her married daughter Ella and her hus-
band, John F. Dorthy, and their two children, to remove to
the home of the plaintiff, if Dorthy would pay the taxes, keep
things in repair and furnish the plaintiff with board.

In pursuance of this arrangement, and in the month of
March, 1892, Dorthy and his family removed to the house of
the plaintiff and continued to reside there until June, 1895.

On the 12th of December, 1892, the defendant John F.
Dorthy, an attorney and counselor at law, caused to be
recorded in the Monroe county clerk's office a deed purport-
ing to have been executed and acknowledged by the plaintiff
on the 31st of October, 1892, in consideration of a dollar
and other valuable consideration, conveying to the defendant
Ella M. Dorthy the premises in question.

On the 6th of May, 1893, the defendant John F. Dorthy
delivered to the defendant The Monroe County Savings Bank
a mortgage, purporting to have been executed by defendant
Ella M. Dorthy and himself, to secure the payment of five
thousand dollars, covering the premises.

On or about the 19th of November, 1894, the defendant
John F. Dorthy and his wife, Ella M. Dorthy, appear to have
executed and delivered a mortgage to the defendant Hiram
L. Barker, covering the premises, as a collateral and continu-

ing security in an amount not exceeding thirteen hundred dollars at any one time.

On the 2nd day of April, 1895, the savings bank began an action to foreclose its mortgage, and shortly thereafter this suit was instituted.

As the decision of the Appellate Division was unanimous, I approach the consideration of this case assuming the facts as found by the Special Term.

The additional and controlling facts are, in substance, as follows: The trial court found that, although the signature affixed to the deed is genuine, the plaintiff signed her name to the paper upon which it was written without any knowledge or information that the paper was a deed of her premises.

That the plaintiff never at any time had any intention of selling the property, and her signature was "procured by the defendant John F. Dorthy by some trick or artifice perpetrated by him in some way or manner which does not appear and is unknown to plaintiff."

That the plaintiff never acknowledged the deed before the commissioner whose certificate of acknowledgment is affixed thereto; that the signature of the commissioner to the certificate of acknowledgment is genuine, "but the same was in some manner obtained by the said defendant John F. Dorthy, in what way does not appear, but without any acknowledgment by the plaintiff to said officer, and without her authority given in any manner whatever."

That there was no delivery of the deed; that there was no consideration passing from mother to daughter; that the daughter had no knowledge of the deed until April, 1895; that the daughter, Ella M. Dorthy, executed and acknowledged the two mortgages referred to "without any knowledge or information on her part as to what the said instruments were, or that the said mortgages conveyed any interest in her mother's said premises"; that the deed and the two mortgages were duly recorded in the Monroe county clerk's office at a date prior to the loans made by the two mortgagees, respectively.

We have, in brief, this state of facts : The plaintiff invites her son-in-law, Dorthy, a lawyer, and her daughter, his wife, to reside with her; they came in March, 1892; by October, 1892, Dorthy had procured the deed of plaintiff; the loan from the savings bank was made in May, 1893, and from Barker in November, 1894, Mrs. Dorthy executing the respective mortgages; these three conveyances were duly recorded.

The mortgagees, when loaning, found a perfect record title in the defendant Ella M. Dorthy; the signature of plaintiff to the deed is genuine; the signature of the acknowledging officer to the certificate of acknowledgment is genuine; the record of the deed in the county clerk's office is genuine. The mortgagees, relying on this record title, loaned their money, receiving from defendants Ella M. Dorthy and husband, a mortgage, in each loan, the execution and acknowledgment of which is not questioned, except that Mrs. Dorthy did not know what the instruments were that she executed.

The mortgagees insist that they are entitled to protection in a court of equity, because they are *bona fide* mortgagees, without notice, relying on a perfect record title; that the loss must fall on the plaintiff, who is responsible for this state of affairs, and not upon them.

Giving to the plaintiff all the advantage she can claim by reason of the facts as found, upon what does she rest her cause of action demanding the cancellation of the deed, the mortgages, the certificates of record, upon which loans have been made in the due course of business, and that these lenders go out of court losers to the extent of their respective advances ?

The plaintiff says, it is true my signature to the deed is genuine, but it was obtained by my son-in-law through some trick or artifice, perpetrated by him in some way or manner unknown to me and which does not appear ; the acknowledging officer says, when confronted with his signature, it is genuine, but it was obtained by defendant John F. Dorthy in some manner unknown to me and without plaintiff's

acknowledgment; the mortgagor avers that she executed the mortgages "without any knowledge on her part as to what said instruments were."

These are the facts upon which plaintiff rests her cause of action against the mortgagees.

It is argued in her behalf that the issues in this case, while important, were issues of fact, and that the findings in her favor are an end of the case as they have been unanimously affirmed.

The argument is that because plaintiff never knowingly executed and delivered the deed it is nothing but a spurious paper, a forgery; that in order to hold her to the deed she must have consciously executed it; that if the mortgagees acted on a fictitious record, it was one in which the plaintiff had no hand or part in making; that during the time of these transactions the plaintiff was in possession of the property; that the mortgagees omitted a plain duty in not calling upon the parties to this transaction and testing the verity of the record.

This argument closes with the suggestion that the rule to the effect where one of two innocent parties must suffer from a wrong, he must bear the loss who enabled the wrong to be done, has no application to this case.

I am of opinion that the facts referred to as found are no answer to the claim of the mortgagees, and that the plaintiff is estopped from denying the execution, acknowledgment, delivery and due record of the deed, for the reason that the present situation is due to her negligent act. The plaintiff being the victim of a fraud by reason of signing a paper, the nature of which she did not take the precaution or trouble to ascertain, cannot claim protection as against *bona fide* mortgagees without notice. The plaintiff's counsel argues that it does not appear how the fraud was perpetrated, and that in the absence of proof it cannot be assumed that plaintiff was careless.

The facts as found show gross negligence on their face. If every one who has carelessly and negligently signed a paper

can take refuge in the statement that he does not know how it happened, there will be little safety in dealing with instruments under seal, duly acknowledged and recorded.

It is argued that plaintiff at the time of these transactions was in possession of the property, and that consequently the mortgagees had notice of her title. The finding as to possession is that the plaintiff "continued in the possession and occupancy of said premises and of the whole thereof except as hereinafter stated."

The findings that follow show the defendants Dorthy and wife in joint occupancy of the premises with plaintiff during the period in question. This joint occupation was not inconsistent with Ella M. Dorthy's title, but rather tended to confirm it.

It was entirely consistent with the title of the apparent owner by the record. (*Pope* v. *Allen*, 90 N. Y. 298, 303 ; *Brown* v. *Volkening*, 64 N. Y. 76.)

The Appellate Division, referring to this argument in favor of the mortgagee appellants, said : " The proposition stated by the appellants appears to be sound, but it is immaterial in view of our assumption that the defendants are *bona fide* mortgagees without notice."

The suggestion that the mortgagees omitted a plain duty in not calling upon the parties to this transaction and ascertaining whether the record title was to be relied upon is without force, as the Recording Act is designed to do away with the necessity of an inquiry that would not only make the loaning of money on real estate a work of great difficulty, often involving impossibilities, but would create risks that life insurance companies, savings banks and individuals would hesitate to assume.

The public records are necessarily relied upon ; they are the foundation to-day of loans representing vast sums of money. (Webb on Record of Title, §§ 4, 89, 90, 154, and cases cited.)

It was such a public record that this plaintiff by her negligent act created.

The plaintiff may set this deed aside as between herself and

the grantee, but the intervening rights of *bona fide* mortgagees without notice she must respect.

In *Page* v. *Krekey* (137 N. Y. at page 312) Judge O'BRIEN states this rule with great clearness, although not writing in a real estate case : " If he actually signed the paper, though procured to do it by fraud, and is chargeable with negligence, he is liable to an innocent party who acted to his prejudice upon the faith of the instrument.　Such cases are not governed by the rules applicable to the *bona fide* holder of negotiable paper procured by fraud, but by the equitable rule that where one of two innocent parties must suffer, he who has put it in the power of a third person to commit the fraud must sustain the loss.　\*　\*　\*　If this instrument had been a negotiable promissory note the defendant's liability to the plaintiff would depend upon the question of negligence and there does not appear to be any sound reason for a different rule in this case (*Chapman* v. *Rose*, 56 N. Y. 137　\*　\*　\*　)."

*Chapman* v. *Rose* (56 N. Y. 137).　This case involves the legality of a negotiable instrument.　The court held that any one having the opportunity and the power to ascertain, with certainty, the exact obligation he is assuming, yet chooses to rely upon the statements of the person with whom he is dealing, and executes a negotiable instrument without reading or examination, is bound as a *bona fide* holder for value.　The theory is that he is guilty of *laches* or negligence in signing the instrument without reading it.　He had power to know with certainty its contents, but saw fit to trust the statements of another.　He thereby placed in circulation what appeared to be, on its face, a valid promise to pay.　The purchaser of this promise in the open market, for value, was entitled to rely upon these facts which were disclosed upon the face of the instrument.

This case rests upon a double principle : that the maker of the instrument is liable for the acts of the person he saw fit to trust, and that the transaction may be regarded as an estoppel.　This court held that to decide otherwise would be to deal a serious blow to commercial paper.　There is no

sound reason why instruments involving title to real estate should not be equally protected as to the *bona fide* mortgagee without notice.

In *Simpson* v. *Del Hoyo* (94 N. Y. 189) it was held that as against a purchaser in good faith and for value of a mortgage upon land, executed by one in possession of, and holding the legal title to, the land, the grantor of the mortgagor is estopped from claiming that the conveyance was induced by fraud on the part of the latter.

The rule that a purchaser of a non-negotiable chose in action takes it subject to all the equities existing between the original parties, and to all the latent equities of third persons, does not apply in such case. While the rule is well established in this court, it has a number of exceptions and this is one of them. A mortgage is never purchased on the faith of the assignor, but always in reliance upon the mortgagor's title. (*McNeil* v. *Tenth National Bank*, 46 N. Y. 335 ; *Moore* v. *Metropolitan National Bank*, 55 N. Y. 41 ; *Green* v. *Warnick*, 64 N. Y. 220 ; *Hill* v. *Hoole*, 116 N. Y., at page 303.)

In *Valentine* v. *Lunt* (115 N. Y. 496) it is held that a grantee or mortgagee, for a valuable consideration and without notice, from one who obtained title by fraud and undue influence, acquires a good title or lien and will be protected against the claims of the defrauded vendor.

The court suggests that it would be contrary to natural justice and reason and opposed to the rules and principles of established equity by which courts are governed in cases of this nature to hold otherwise. The court here applied the doctrine of estoppel.

The principle announced in the foregoing cases is fully recognized in England.

In *Briggs* v. *Jones* (L. R. [10 Equity Cas.] 92) Briggs was the mortgagee of leasehold property and he loaned his lease to the mortgagor, for the purpose of raising money upon it, but at the same time told the mortgagor to inform the person from whom he proposed to borrow the money that he (Briggs) had a prior charge thereon. The mortgagor borrowed money from

his bankers upon the security by a deposit of the lease without giving them notice of Briggs' mortgage thereon.

The court held, Lord ROMILLY, master of the rolls, delivering the opinion, that Briggs' lien on the lease must be postponed to that of the bankers, for the reason that by placing the lease in the mortgagor's hands Briggs had enabled him to mislead the bankers.

In *Hunter* v. *Walters*, and two other causes heard at the same time (L. R. [11 Equity Cas.] 291), the facts were as follows: Walters was a solicitor of two mortgagees, Hunter and Darnell, and put up for sale by auction, without authority, the mortgaged estate. Walters professed to have bought the estate and prepared a conveyance which purported to have been made by the second mortgagee under his power of sale. The mortgagees both executed the conveyance to Walters and also signed indorsed receipts for money paid to them, although no money was in fact paid to them. Walters took possession of the estate and continued to pay interest to the mortgagees and afterwards made an equitable mortgage of the estate, representing it to be his own and unincumbered. As to the first mortgagee there was evidence that he was deceived by the solicitor, and as to the second mortgagee there was evidence that he had trusted the solicitor implicitly.

It was held by the vice-chancellor that Hunter and Darnell, though they executed the conveyance in ignorance of its contents, had passed the estate to Walters; that they had, by signing receipts for the purchase money, armed Walters with power dealing with the estate as the absolute owner and had thereby given priority to the lien of the subsequent mortgagee. This decision was affirmed. (L. R. [7 Chancery App.] 75.)

Lord HATHERLY, lord chancellor, wrote the main opinion, and two of the lord justices also writing.

Lord Justice Sir W. M. JAMES said, in the course of his opinion: " To my mind it is almost ludicrous to contend, and it would be most injurious to hold, that a man executing a deed and signing a receipt, as a matter of form, should be able

to say that it is a nullity."   \*   \*   \*   "I am of opinion that the rule of equity is the rule of common sense; that the principal must suffer for the fraud of his agent and not the stranger who is dealing with the agent; that the man who has made the representations, under whatever circumstances, must bear the consequences of those representations, and not the man who has trusted to the representations so made."

The general principle under discussion has also been recognized in the courts of several of the states.

A very well-considered case, involving these principles, but under a different state of facts, is *Heyder* v. *Excelsior Building Loan Association* (42 N. J. Equity, 403). It was held there that the lien of a mortgage duly registered will not be lost by a cancellation of record effected through accident, or the mistake or fraud of third persons. If the cancellation be the result of the negligence of the owner, he will not be permitted to establish his lien against subsequent *bona fide* purchasers or mortgagees acting upon the faith of such cancellation of record. In this case the mortgagor was the attorney of the association and had given it a mortgage to secure a loan. The mortgagor subsequently obtained possession of the mortgage and indorsed upon it the name of the association without authority and a certificate of cancellation which was recorded. He then sold the property to a *bona fide* purchaser as free from incumbrance.

The trial court held that the purchaser, not the mortgagee, should bear the loss incident to the fraudulent cancellation of the mortgage, but the Court of Chancery on appeal reversed this judgment and held that the mortgagee should suffer the loss, as it was directly chargeable to their negligence or fault that the mortgagor was placed in possession of the unpaid mortgage.

Judge STORY, in his Equity Jurisprudence (Vol. I, § 434), in commenting upon the position of a *bona fide* purchaser for a valuable consideration, without notice, under the circumstances that we have been considering, said: " Such a person is a favorite in the eyes of a court of equity and is always pro-

tected, as has been already intimated against claims of this sort."

In *Gavagan* v. *Bryant* (83 Ill. 376) the grantor was deceived and told he was signing a five years' lease, when, in fact, it was a deed. He was held negligent and *bona fide* purchaser protected. (See, also, *Lawrence* v. *Guaranty Investment Co.*, 51 Kansas, 222.)

It is urged that in some of the foregoing cases the party sought to be charged consciously and voluntarily executed a conveyance or other instrument by fraudulent inducement, and that the principle of equity therein invoked has no application to the case of one whose signature was obtained by trick or device to a paper, the character of which was unknown by reason of the carelessness or negligence of the person so signing. There is no distinction between the cases in sound reason or on authority. If A., by reason of fraudulent representations, knowingly executes a deed, he is estopped from urging the fraud against the subsequent *bona fide* mortgagee without notice; he trusted to the person who deceived him, and must take the consequences. If B., with utter disregard of results, signs a paper at the solicitation of one occupying a confidential relation to him, the contents of which he does not ascertain, but which was in fact a deed, can it be said that his position in a court of equity is more favorable than that of A.? He stands clearly within the rule that where one of two innocent parties must suffer from a wrongful act, he must bear the loss who enabled the wrong to be done; his position is less favorable than A.'s, for he has been guilty of negligence, while the former trusted a person he believed honest.

This plaintiff, as matter of law, on the conceded facts, is estopped from denying the acknowledgment and delivery of the deed She is, by the findings, ignorant of the trick or artifice perpetrated upon her. The deception, so far as this record goes, is a mere figment of her imagination — a suspicion. She admits her signature and stops there; as to how it was obtained, this case is absolutely silent.

The plaintiff is found to have signed a paper, of whose

contents she was wholly ignorant, which, unexplained, is gross negligence, and, in the absence of evidence to the contrary, it must be presumed that she parted with the instrument by voluntary delivery. (*Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. at top page 624.)

This case was decided below, ignoring the doctrine of negligence and estoppel, and apparently assuming that the mortgagees' rights depended upon the validity of the deed between the parties.

With all respect, I think to affirm the judgment before us is to disregard well-settled principles which have long been recognized by courts of equity, to cast discredit upon record titles, and to deter capitalists from loaning money on real estate security.

The judgment appealed from should be reversed and a new trial ordered.

O'Brien and Haight, JJ., read for affirmance; Parker, Ch. J., and Martin, J., concur; Gray and Bartlett, JJ., read for reversal; Vann, J., not voting.

Judgment affirmed.