Chief Judge Lippman
(dissenting). I believe that plaintiffs action against defendant Bank of America, seeking to invalidate the Bank’s mortgage interest in real property conveyed by an allegedly forged deed, is subject to the six-year statute of limitations under CPLR 213 (8). Because plaintiff did not commence this action within either the applicable six-year limitation period, or two-year discovery window provided by the statute, I would find that the claim is time-barred. In 1996, defendant Dorothy Lewis and her brother, Percy Lee Gogins, Jr., *232 inherited property located at 1900 Bergen Street in Brooklyn. They took title to the property as tenants in common, each with an undivided one-half interest. Dorothy Lewis subsequently conveyed her interest in the property to her daughter, defendant Tonya Lewis, by quitclaim deed dated May 21, 2000. On February 14, 2001, Tonya Lewis recorded a “correction deed” dated December 14, 2000. That document, which plaintiff alleges is a forgery, purported to correct the earlier quitclaim deed by adding Percy Gogins as an additional grantor, thereby conveying the entire property to Tonya Lewis. Percy Gogins died in March 2001.
Plaintiff Dorothy Faison, Percy Gogins’ daughter, commenced a pro se action in Supreme Court in September 2002, alleging that the Lewis defendants had engaged in a scheme to defraud by forging and filing a false deed. The complaint was dismissed under CPLR 3211 (a) because plaintiff lacked capacity to maintain it, as she had not been appointed the administrator of her father’s estate, and for failure to state a cause of action upon which relief could be granted.
Years passed, during which plaintiff took no further action. In December 2009, defendant Tonya Lewis obtained a mortgage on the property from defendant Bank of America in the amount of $269,332. Soon thereafter, plaintiff petitioned Surrogate’s Court for a decree appointing her the administrator of Percy Gogins’ estate. In connection with that proceeding, plaintiff submitted an affidavit of delay, in which she represented that she had discovered the existence of the forged deed “[a]t some time in or around 2003.” Plaintiff was appointed the administrator of her father’s estate in July 2010.
The following month, plaintiff commenced this action, in her capacity as administrator of Gogins’ estate, against the Lewis defendants, Bank of America and defendant Mortgage Electronic Registration Systems, Inc. (as nominee for Bank of America). According to the complaint, plaintiff is a resident of the State of Georgia. Plaintiff alleged that Gogins had never authorized the transfer of his ownership interest in the property and that the December 2000 correction deed was a forgery. She sought a judgment declaring the deed null and void, directing defendant Tonya Lewis to disgorge half of all rents and profits generated by the premises, and setting aside and canceling the mortgage. The courts below granted Bank of America’s motion to dismiss the action under CPLR 3211 (a) (5) on statute of limitations grounds.
*233 The majority finds that plaintiffs action should not have been dismissed as untimely — indeed, that it is not subject to any statute of limitations whatsoever — because the allegedly forged deed was void and therefore incapable of conveying any property interest. Since the void deed is a nullity, the majority finds that a property owner has no obligation to take prompt legal action to enforce her rights. The majority correctly relies on Marden v Dorthy (160 NY 39 [1899]) for the proposition that a forged deed is void at its inception (see majority op at 224). We agree with this long-held position. However, Marden is not a statute of limitations case and, therefore, reliance on its authority is inappropriate at this procedural juncture.
While a deed proved to have been a forgery cannot operate to affect ownership rights, this does not compel the result that the opportunity to challenge such conveyance is without limit. “Statutes of Limitation are essentially arbitrary time limitations barring the commencement of an action, and they reflect the legislative judgment that individuals should be protected from stale claims” (McCarthy v Volkswagen of Am., 55 NY2d 543, 548 [1982]). While statutes of limitations foreclose a party’s claim, they do not extinguish a party’s underlying right (see Hulbert v Clark, 128 NY 295, 298 [1891]; see also Siegel, NY Prac § 34 at 44 [5th ed 2011] [“The theory of the statute of limitations generally followed in New York is that the passing of the applicable period does not wipe out the substantive right; it merely suspends the remedy”]).
“In examining the policies underlying Statutes of Limitation, this Court has emphasized both a defendant’s interest in repose and ‘in defending a claim before [the] ability to do so has deteriorated through passage of time.’ We have also taken note of considerations of judicial economy and possible plaintiff fraud where excessive factual inquiries would be necessary. Balanced against these considerations is the injured person’s interest in having a reasonable opportunity to assert a claim” (Blanco v American Tel. & Tel. Co., 90 NY2d 757, 773-774 [1997] [citations omitted]).
I would conclude that an action to invalidate a forged deed is subject to a statute of limitations defense. Forgery is closely related to and essentially a type of fraud. We have previously observed that forgery was “defined by the common law to be the fraudulent making of a writing to the prejudice of *234 another’s rights, or the making malo animo of any written instrument for the purpose of fraud and deceit” (Marden, 160 NY at 53 [citations omitted]). It is therefore logical and reasonable to apply the statute of limitations for fraud to forgery claims (see e.g. Piedra v Vanover, 174 AD2d 191, 194 [2d Dept 1992]). Under CPLR 213 (8), such a cause of action must be commenced within “the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discover^] the fraud, or could with reasonable diligence have discovered it.” The application of the statute of limitations here has the benefit of imposing some limit on the time in which claims can be brought, while also leaving a discovery window for forgery claims which, like fraud, can be concealed from the plaintiff.
A contrary rule under which plaintiff would prevail entails no statute of limitations applicable to an action alleging forgery. We have never so held. To the contrary, the CPLR imposes a six-year limitations period for “action [s] for which no limitation is specifically prescribed by law” (CPLR 213 [1]). And, despite the majority’s repeated invocation of the well-settled principle that a forged deed is a void instrument, not one of the cases it cites addresses the timeliness of this type of action. Rather, New York courts that have considered the issue have consistently applied a six-year statute of limitations to situations like this one (see Vilsack v Meyer, 96 AD3d 827 [2d Dept 2012]; Shalik v Hewlett Assoc., L.P., 93 AD3d 777 [2d Dept 2012]; JP Morgan Chase Bank, N.A. v Kalpakis, 91 AD3d 722 [2d Dept 2012]; Coombs v Jervier, 74 AD3d 724 [2d Dept 2010]; Georgiou v Panayia of Mtns. Greek Orthodox Monastery, Inc., 16 AD3d 998 [3d Dept 2005]; Piedra, 174 AD2d 191; see also Endervelt v Slade, 194 AD2d 305 [1st Dept 1993]).
Indeed, the absence of any limitations period could result in the commencement of actions that the passage of time makes exceedingly difficult, or impossible, to defend; a plaintiff could, for instance, bring the claim long after the relevant events, but just after the death of the crucial defense witness. Notably, although the majority observes that Florida technically imposes no statute of limitations in this context, that state has the “Marketable Record Title Act,” which, with certain exceptions, essentially deems properly recorded deeds to be valid after a 30-year period (see Fla Stat § 712.02; H & F Land, Inc. v Panama City-Bay County Airport & Indus. Dist., 736 So 2d 1167, 1172 [Fla 1999] [“a root of title based upon a forged deed would *235 prevail even over an otherwise entirely valid deed recorded earlier in the chain of title”]; Marshall v Hollywood, Inc., 236 So 2d 114, 120 [Fla 1970]).
In analogous circumstances to those presented here, we have required individuals to abide by applicable limitations periods (see e.g. Ford v Clendenin, 215 NY 10, 17 [1915] [applying a 10-year statute of limitations to an action in equity to quiet title by one who was out of possession]; 8-87 Warren’s Weed, New York Real Property § 87.45; Hechter v New York Life Ins. Co., 46 NY2d 34, 39 [1978] [applying a six-year statute of limitations to a UCC claim “against a bank for collecting an instrument over a forged indorsement”]). And, while forgery is subject to criminal liability, there is also a statute of limitations applicable to those crimes (see CPL 30.10 [2] [b], [c]; Penal Law §§ 170.05, 170.10, 170.15 [five years for the felony offenses of first- and second-degree forgery and two years for the misdemeanor offense of third-degree forgery]).
Plaintiff asserts that the decision below conflicts with our holding in Riverside Syndicate, Inc. v Munroe (10 NY3d 18 [2008]), wherein we determined that an agreement to pay illegal rent for a rent-stabilized apartment was void and unenforceable by either party. The agreement, under which the tenants agreed to waive the benefit of rent stabilization in exchange for the ability to use the apartment as a second home, was deemed to be violative of public policy and contrary to the express terms of the Rent Stabilization Code (see Riverside Syndicate, 10 NY3d at 22). We rejected the argument that the landlord’s action, seeking a declaration that the agreement was void, was barred by the six-year statute of limitations pertaining to contractual obligations or liability (see Riverside Syndicate, 10 NY3d at 24; CPLR 213 [2]). We noted that “[t]his action [was] not one ‘upon a contractual obligation or liability’ ” for which the six-year limitations period was set forth in CPLR 213 (2), but was “to declare that no valid contractual obligations ever existed” (Riverside Syndicate, 10 NY3d at 24).
Riverside is unlike the situation presented here. It is well settled that “illegal contracts, or those contrary to public policy, are unenforceable and that the courts will not recognize rights arising from them” (Szerdahelyi v Harris, 67 NY2d 42, 48 [1986]). “[T]he law ‘will not extend its aid to either of the parties [to an illegal contract]’ or ‘listen to their complaints against each other, but will leave them where their own acts have placed them’ ” (Stone v Freeman, 298 NY 268, 271 [1948], quot *236 ing Schermerhorn v Talman, 14 NY 93, 141 [1856]). Plaintiffs claim, seeking to invalidate an allegedly forged deed, does not involve the same public policy concerns. In contrast with the situation presented by parties attempting to enforce an illegal contract — which only involves those parties — in a dispute over real property ownership rights, the rights of an unlimited number of innocent purchasers who rely on the transfer documents in a chain of title can be affected by a forged deed.*
Plaintiff also relies upon Cameron Estates, Inc. v Deering (308 NY 24 [1954]), in which we held that the statute of limitations could not be invoked to prevent a taxpayer from challenging a void tax deed. That case, however, is also inapt. The plaintiff in Cameron Estates had paid the taxes on the property and brought the action to remove a cloud on his title.
“When void tax deeds are attempted to be made prima facie evidence of the regularity of the proceedings, equity will interfere to permit removal as a cloud on title which right may be invoked by the owner in possession at any time as ‘such a right is never barred by the Statute of Limitations’ ” (Cameron Estates, 308 NY at 31 [citations omitted]).
Plaintiff does not claim to be in possession of the property and it is therefore unnecessary to address the consequences of what would flow from such fact.
The stability of the State’s real property system is plainly important and the idea of losing one’s property because of a forged deed is, of course, offensive. But it is no more so than the plight of any innocent plaintiff being barred from attempting to obtain relief from an injury by failing to commence an action within the time limits set by the legislature. Indeed, it is the prospect of no repose, particularly where the property may have changed hands since the allegedly forged deed, that would appear to endanger the stability of real property transactions. The majority’s rule permits a person who discovers a *237 forged deed to sit on his or her rights and commence an action at any time. Thus, a plaintiff could do nothing until it became impossible to defend a claim of forgery, thereby making title to real property subject to reversal indefinitely. Contrary to the majority’s position that its rule will foster security, in fact, the absence of a statute of limitations will result in just the opposite because, under the majority’s holding, every deed is subject to attack at any time. Limitation periods can sometimes work a hardship, but they are set for a reason and particularly where, as here, a discovery window applies, there is no compelling reason to exempt an entire cause of action from any time limit at all.
Here, the deed was allegedly forged in December 2000. In addition, according to her Surrogate’s Court submission, plaintiff had been aware of the deed no later than 2003 (indeed, a prior action was commenced in Sept. 2002). Since, in this circumstance, the two years afforded by the discovery rule would not have extended the six-year statute of limitations, I would find that this action as against the Bank, which was not commenced until August 2010, was untimely and was properly dismissed by the courts below.
Judges Read, Pigott and Fahey concur; Chief Judge Lipppman dissents in an opinion in which Judges Abdus-Salaam and Stein concur.
Order, insofar as appealed from, reversed, with costs, and defendant Bank of America, N.A.’s motion to dismiss the complaint against it pursuant to CPLR 3211 (a) (5) denied.

 The majority’s reliance on Riverside’s reference to Pacchiana v Pacchiana (94 AD2d 721 [2d Dept 1983]) appears to be misplaced. That case did not rely on statutory rules of real property conveyance to find the prenuptial agreement void. Rather, the opinion merely referenced real property rules in addressing the plaintiffs claim that the agreement had not been executed in conformity with the acknowledgment requirements for such agreements contained in Domestic Relations Law § 236 (B) (3) (see Pacchiana, 94 AD2d at 721-722; see also EPTL 5-1.1 [f] [2]; Domestic Relations Law § 236 [B] [3]).